UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHEL RIDGELY, | ) |
|     Plaintiff | ) |
| | ) Civil Action 05-1033 (GK) |
| v. | ) |
| | ) |
| ELAINE CHAO | ) |
|     Defendant | ) |

**DEFENDANT'S MOTION TO DISMISS
OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**

By Order dated September 7, 2005, the Court directed plaintiff to file a more definite statement of his complaint or suffer dismissal.  Plaintiff on September 22, 2005, filed an amended complaint. Defendant respectfully moves to dismiss the amended complaint on the grounds that

1. venue in the District of Columbia is improper, Federal Rule of Civil Procedure 12 (b)(3);

2. plaintiff's claims were not timely brought to the EEO;

3. plaintiff elected the grievance procedure as to his alleged harassment claim;

4. plaintiff fails to state a claim upon which relief can be granted because he has not alleged adverse employment actions, pursuant to Rule 12 (b)(6), or in the alternative summary judgment should be granted to defendant as to those claims, and

1

5.  any alleged adverse action in paragraph 11 relating to failure to promote was corrected prior to plaintiff filing suit in this Court.

Respectfully submitted,

_____
KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney

_____
R. CRAIG LAWRENCE, D.C. BAR # 171538
Assistant United States Attorney

_____
RHONDA C. FIELDS
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.  20530
202/514/6970

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHEL RIDGELY,<br>    Plaintiff | )<br>)<br>) Civil Action 05-1033 (GK) |
| v. | )<br>) |
| ELAINE CHAO<br>    Defendant | )<br>) |

**DEFENDANT'S POINTS AND AUTHORITIES IN SUPPORT OF
ITS MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**

Defendant respectfully submits this Statement of Points and Authorities in Support of Its Motion to Dismiss or in the Alternative for Summary Judgment.

**1. STANDARD OF REVIEW**

In making determinations on a motion to dismiss under Rule 12(b)(6), the Court must view facts alleged in the complaint in the light most favorable to the plaintiff. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Nix v. Hoke*, 139 F. Supp. 2d 125,129 (D.D.C. 2001), *citing, Weyrich v. The New Republic, Inc.,* 235 F.3d 617, 623 (D.C. Cir. 2001); *see also, Slaby v. Fairbridge*, 3 F.Supp.2d 22, 27 (D.D.C. 1998). A complaint should be dismissed if it "appears beyond a reasonable doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45-56.

A court may resolve a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) in two ways. First, the court may determine the motion based solely on the complaint. *Herbert v. National Academy of Science*, 974 F.2d 192, 197 (D.C. Cir. 1992). Alternatively, to determine the existence of jurisdiction, a court may look beyond the allegations of the complaint, consider affidavits and other extrinsic information, and ultimately weigh the conflicting evidence.

*See id.*

Summary judgment may be granted when the pleadings and evidence demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C.Cir. 1995). A genuine issue is one that could change the outcome of the litigation. See Anderson v. Liberty Lobby, Inc, 477 U.S. 242, 243 (1986). While all evidence and the inferences drawn therefrom must be considered in the light most favorable to the nonmoving party, *see, Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), a complaint should be dismissed if it "appears beyond a reasonable doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

Applying these standards demonstrates that Plaintiff's complaint should be dismissed in its entirety.

**2. VENUE**

On September 22, 2005, plaintiff filed an amended complaint in this matter. Plaintiff alleged that venue in the District of Columbia is proper because 1) records related to his union grievance over matters related to the alleged discriminatory conduct are maintained and administered in the District of Columbia, and 2) records relating to the EEO investigation of the matter are maintained and administered at the civil rights office of defendant in Washington D.C. Amended Complaint at ¶ 5.

However, in paragraphs 10 and 11 of the amended complaint plaintiff admits that all of the alleged discriminatory conduct occurred in Arlington, Virginia. Additionally, plaintiff's

employment records are maintained in Virginia. Declaration of Angelica Hackney ("Hackney Dec.") at ¶ 3.[1]

The venue rules for a Title VII action are set forth in 42 U.S.C. § 2000e-5(f)(3) which provides, in pertinent part:

> Such an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office.

*Archuleta v. Sullivan*, 725 F.Supp. 602, 603 -604 (D.D.C.,1989). Since the alleged unlawful employment practices are alleged to have been committed in Virginia, and since plaintiff's employment records are maintained in Virginia, venue in the District of Columbia is improper.

Allegations that records concerning plaintiff's grievance and EEO investigation are maintained and administered in the District of Columbia are insufficient to place venue in this District.

This Court has specifically ruled that administrative processing of a complaint does not create venue under the statute:

> Although she may have filed her EEOC complaint in Washington, her employment records are not considered "maintained and administered" at the EEOC office for purposes of determining proper venue under 42 U.S.C. § 2000e-5(f)(3). *See Lee v. England*, 2004 WL 764441, *1 (D.D.C. Mar.9, 2004) (noting that administrative processing of plaintiff's complaint in the District of Columbia did not create venue under 42 U.S.C. § 2000e-5(f)(3)). Using employment records to process an

---

[1] The court may consider extrinsic evidence when deciding a Rule 12(b)(3) motion to dismiss for lack of venue. *Smith v. US Investigations Services, Inc.* 2004 WL 2663143, *1 (D.D.C.2004)

3

> administrative complaint is not "maintaining and administering" the employment records for purposes of establishing venue under 42 U.S.C. § 2000e-5(f)(3). *See Lee*, 2004 WL 764441 at *1 (basing venue on administrative processing of plaintiff's complaint through the human resources office at the Washington Navy Yard would "sidestep the language of [42 U.S.C. § 2000e-5(f)(3) ], which deals not with administrative processing of the litigation but with the maintenance and administration of employment records relevant to the challenged employment practice"). Indeed, plaintiff's position would undercut the clear Congressional intent to limit venue in federal employment discrimination actions to judicial districts that are concerned with the alleged discrimination. *See Stebbins v. State Farm Mutual Automobile Ins. Co.*, 413 F.2d 1100, 1102 (D.C.Cir.), *cert. denied*, 396 U.S. 895, 90 S.Ct. 194, 24 L.Ed.2d 173 (1969).

*Saran v. Harvey,* 2005 WL 1106347, *3 (D.D.C.2005); *accord Robinson v. Potter*, 2005 WL 1151429, *5 ((D.D.C.2005)(Plaintiff claimed venue because his injury compensation files were located in District of Columbia; his supervisory files were maintained in Maryland. The Court ruled: "Because the plaintiff's allegations stem from the plaintiff's job assignments and the supervisors controlling his job assignments, which are described in the supervisory files, the files maintained in Maryland are the employment records relevant to the alleged unlawful employment practice.").

The files relating to the administrative processing of plaintiff's grievance and EEO complaint are not the relevant employment records for establishing venue. Plaintiff has failed to allege venue in the District of Columbia. Therefore his complaint should be dismissed.

**3.  EXHAUSTION OF ADMINISTRATIVE REMEDIES**

In order to pursue a cause of action in federal court for employment discrimination under Title VII, a plaintiff is required to exhaust his administrative remedies. *Bayer v. U.S. Dept. of Treasury*, 956 F.2d 330, 332 (D.C.Cir.1992). To properly raise a claim under Title VII, a federal employee must contact an EEO counselor within 45 days of the plaintiff's notification of the

allegedly discriminatory event. *Park v. Howard University*, 71 F.3d 904, 907 (D.C.Cir.1995); 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.105(a)(1). This 45-day time limit is not jurisdictional, but operates as a statute of limitations defense. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982); *Armstrong v. Reno*, 172 F Supp. 2d 11, 20 (D.D.C. 2001) *See also Delaware State College v. Ricks*, 449 U.S. 250, 258 (1980) (filing period begins at time of alleged discrimination, not when its effects are later felt).

Plaintiff alleges discrimination on the basis of race, age, gender and retaliation. Amended Complaint at ¶1.

**Amended Complaint ¶10: CRC 00 11 152.**

The first factual situation about which plaintiff complains relates to his EEO complaint number CRC 00 11 152. *Id*. at ¶10. Plaintiff alleges two categories of discriminatory acts. He alleges that from September 1997 to about July 30, 2000 when he moved to a new position in a different Office, his supervisor Ms. Stoehr "hindered his promotion." *Id*.at ¶¶10-11. He also alleges that in late June 2000 he became aware that Ms. Stoehr was reassigning his supervisory duties to a younger black male. *Id*. About a month later, plaintiff took a position in the Office of Assessments. *Id.* at ¶11.

In his informal EEO complaint pertaining to CRC 00 11 152, plaintiff stated that his first contact on the matter was with an EEO counselor in June 2000. ROI B1 at boxes 8, 9.

Forty-five days before June 1, 2000 is April 17, 2000. Therefore, for plaintiff's Title VII claims, any alleged discriminatory incidents that occurred prior to April 17, 2000 are barred because plaintiff did not consult with an EEO counselor within 45 days of the incident, as required by 29 C.F.R. § 1614.105(a)(1).

Plaintiff alleges that Ms. Stoehr hindered his promotion from Sept 1997 to about July 30, 2000. Amended Complaint at ¶10,11.

Any alleged act of discrimination by Ms Stoehr which occurred before April 17, 2000, is in excess of 45 days from plaintiff's initial contact with an EEO counselor in June 2000. Therefore, the allegations in ¶10 that prior to April 17, 2000, Ms. Stoehr hindered plaintiff's promotion were not timely made and should be dismissed as a basis for liability under Title VII.

To pursue an age discrimination claim a plaintiff must notify the EEOC within 180 days of the alleged discriminatory act. 29 U.S.C. 626(d)(1). Therefore, any alleged acts that occurred prior to December 2, 1999 are barred for age discrimination claims. Therefore, any allegations in ¶10 that Ms. Stoehr hindered his promotion prior to December 2, 1999, were not timely made and should be dismissed as to age discrimination allegations.

**Amended Complaint ¶11: CRC 03 11 111**

In paragraph 11 of the amended complaint plaintiff alleges harassment by his immediate supervisor Ms. Douglas from July 2000 until March 2002. He alleges being slapped in the face, rubbing in the crotch area and offensive verbal comments which were sexual in nature. Amended Complaint at ¶11. These alleged incidents occurred some time before May 15, 2001 when plaintiff filed a union grievance concerning the acts. Plaintiff's Affidavit, ROI '111[2] at F-1-4 Question 2 and G-5-87. Plaintiff did not present these allegations to the EEO until after March 2003 when he made contact alleging reprisal when on March 3, 2003 he was informed his promotion to GS 12 had been pulled back. ROI '111 at B1-1. Plaintiff's formal complaint, dated May 27, 2003 added

---

[2] Excerpts from the Report of Investigation for CRC case # 03-11-111 are identified herein as ROI '111 and from Report of Investigation for CRC case # 00-11-152 are identified as ROI '152.

the allegations of sexual harassment. ROI '111 at A- 4,5.

Plaintiff's allegations against his direct supervisor Ms. Douglas clearly are untimely. He alleges the acts ended in March 2002, Amended Complaint at ¶11, but he did not raise the issue with the EEO until a year later in May 2003. ROI '111 at A-4,5. Therefore all claims relating to alleged discrimination based on acts of Ms. Douglas should be dismissed and stricken from the complaint.

### 3. Harassment Claim Is Barred by Election of Grievance Remedy

Plaintiff's allegations of harassment by Ms. Douglas are barred by Article 20, § 7.c of the Collective Bargaining Agreement. Section 7.c provides:

> An employee may raise a complaint of discrimination through the Department's EEO administrative complaint process or through the negotiated grievance procedure, but not both. An employee shall be deemed to have exercised his option when the matter that gave rise to the allegation of discrimination is made the subject of a timely filed grievance or a formal EEO complaint, which ever event occurs first. Consultation with an EEO counselor . . .does not constitute filing a formal EEO complaint

Collective Bargaining Agreement, Article 20, §7.c.

On May 15, 2001, Plaintiff filed a grievance concerning these same issues of harassment. ROI '111 at F-1-4, 6. Plaintiff also filed a second grievance on February 22, 2002, alleging *inter alia*, a history of physical violence, stealing and vulgar language. ROI '111 at G-5-22. The grievances at issue preceded plaintiff's informal EEO complaint, which was filed on April 8, 2003, and his formal complaint, which was filed on May 27, 2003. *See* ROI '111 at A-1, B-1-1. In his formal complaint filed with the EEOC, and his Amended Complaint filed with this Court, plaintiff conceded that he filed a grievance over these matters. See ROI '111 at A-3 and Amended Complaint at ¶11.

Because Plaintiff previously filed grievances over these same matters under a negotiated grievance procedure that permits allegations of discrimination, his complaint here must be dismissed. See 5 U.S.C. §7121(d); 29 C.F.R. §§1614.107(a)(4), 1614.301(a). Plaintiff has elected his remedy regarding these issues and should not be permitted to take a second bite at the apple.

**5. FAILURE TO STATE A CLAIM: NO ADVERSE EMPLOYMENT ACTION**

**Paragraph 10 allegations:**

**Hindered Promotion**

Plaintiff alleges that Ms. Stoehr "hindered" his promotion from Sept 1997 until his selection to a new position in a new section on about July 30, 2000. Amended Complaint at ¶¶10 and 11. He claims that

> Prior to Melissa Stoehr (black female) becoming the Plaintiff's immediate supervisor in September of 1997, management had initiated the process of promoting him to at least the GS13 level. Ms. Stoehr hindered the Plaintiff's promotion in favor of individuals who were younger, black, and less qualified then plaintiff.

Amended Complaint at ¶10.

In August 1994, plaintiff held the position of Management Analyst, GS-9 which was the full performance level for the position. Hackney Dec. at ¶ 4. In August 1994, the position was reevaluated resulting in a classification change to a higher grade to the position of Printing Specialist, GS-11, due to additional duties and responsibilities. *Id.* and Ex H1. The GS-11 was the full performance level for the Printing Specialist position; there was no additional non-competitive promotion potential. Hackney Dec. at ¶ 4.

In January 1999 he received a promotion to a supervisory position. Complaint at ¶10. Plaintiff's supervisory promotion, effective January 31, 1999, was a reassignment to Supply

8

Management Officer at the GS 11 level. Hackney Dec. at ¶5 and Ex H2. The journeyman level for the position was GS-11. Hackney Dec. at ¶5. To receive a promotion to the GS-12 grade level, plaintiff would have to apply and compete for a GS-12 position, subject to exceptions which plaintiff has not claimed are applicable to him. Hackney Dec. at ¶5 and see 5 CFR 335.103 (c)(2) and (3).

On July 30, 2000, plaintiff was competitively selected for a position in a different office, the Office of Assessments. Hackney Dec. at ¶6 and Ex H3. His supervisor became Ms. Douglas. Complaint at ¶ 11.

Therefore, prior to July 30, 2000, for the period of time plaintiff was under the supervision of Ms. Stoehr, there was no non-competitive promotion potential in plaintiff's two positions as GS-11 Printing Specialist and GS-11 Supply Management Officer.

Plaintiff did not allege in his amended complaint or in his affidavit to the EEOC, ROI '152 at F1, that he was eligible for promotion to a higher grade in a career ladder position. Plaintiff has failed to allege that he applied for and was not selected for a higher grade position which Ms. Stoehr denied him. Plaintiff also has not alleged that he requested a desk audit for reclassification of the Printing Specialist or Supply Management Officer positions.[3] *See e.g. Milliner v. District of Columbia* 932 F.Supp. 345, 351 (D.D.C.1996)("In addition, plaintiff has not even shown that she suffered an adverse employment action, since no position had been created into which plaintiff could have been promoted, and Holifield (and ADASA) had no power to create a Grade 7 position

---

[3] Congress, through statute, and the OPM, through regulations, have established a structure in which positions are classified and disputes about classifications are resolved. See 5 U.S.C. § 5105-5115, 5 C.F.R., Part 511. Plaintiff could have filed a classification appeal or requested a desk audit to have a personnel specialist review his work to determine if he was performing higher-graded duties.

9

without approval from the Office of Personnel"); *Stella v. Mineta*, 284 F.3d 135, 139 (D.C.Cir. 2002) ("In making out a prima facie case of discrimination, a plaintiff need only show that he/she is a member of a protected class, **that he/she applied for and was denied an available position** for which he/she is qualified . . . .")(emphasis added.); *Williamson v. Shalala,* 992 F.Supp. 454, 460 (D.D.C.1998) ("To establish a prima facie case, plaintiff must show that: (1) he is a member of a protected class; (2) **he was qualified for a promotion** to the GS-4 level; (3) he was rejected; and (4) other individuals with plaintiff's qualifications were given a promotion"); *Marshall v. Shalala,* 16 F. Supp.2d 16, 20 (D.D.C. 1998) (the court found it fatal that plaintiff had not requested a desk audit and said that he "cannot now complain" that he has not been promoted when "the opportunity existed all along and he simply failed to seize it." ).

Plaintiff's allegation in the complaint that Ms. Stoehr "hindered" his promotion does not allege any adverse personnel action, and plaintiff has not in his factual submission alleged any actionable personnel action in relation to his lack of promotion from the GS-11 level. *See generally* plaintiff's affidavit, ROI '152 at F1.

Therefore, the allegations of discrimination due to Ms Stoehr's "hindering" plaintiff's promotion should be dismissed for failure to state a claim upon which relief can be granted, or in the alternative, summary judgment should be granted to the defendant for failure to establish a prima facie case.

**Became aware Stoehr was reassigning his supervisory duties**

Plaintiff alleges that he was discriminated against when "In late June, 2000, Plaintiff became aware that Ms. Stoehr was reassigning his supervisory duties to a younger black male who was less qualified." Amended complaint at ¶10. Plaintiff identified the individual referred to as

Charles Brinkley. ROI '152 at F5 , 8, 18 (Plaintiff's affidavit).

Plaintiff stated that his second level supervisor, Mr. Nixon, told him that "ultimately, my supervisory duties would be taken from me and given to Charles Brinkley, this would be done to justify Mr. Brinkley's GS-13 grade." ROI '152 at F11. Plaintiff's exhibit 15 reflects that on June 5, 2000, Mr. Nixon allegedly told plaintiff that he was rewriting plaintiff's position description and that the supervisory responsibilities would be removed from the position description. ROI'152 at 15.1.

Plaintiff did not allege in his complaint, and he submitted no evidence that he was in fact, put on a new position description removing his supervisory duties. Simply being told that his supervisory responsibilities were going to be removed in the future is not an adverse employment action. *Keeley v. Small*, 391 F.Supp.2d 30, 42 (D.D.C.2005)("[T]here is no evidence that his position was in fact reclassified as temporary, or that any such reclassification, if it did occur, caused an objectively tangible harm to the terms of his employment. The same analysis applies to plaintiff's claim that he was threatened with termination. . . . there is no dispute that plaintiff was in fact not terminated. Thus, he did not suffer an adverse employment action because he suffered no objectively tangible harm to the terms or conditions of his employment. On these two claims, defendant is therefore entitled to summary judgment because plaintiff has not establish[ed] a prima facie case."). Similarly, plaintiff Ridgely has failed to allege an adverse personnel action or establish a prima facie case.

Plaintiff appears to proffer Mr. Brinkley as a comparator in order to raise an inference of discrimination. *Powell v. Washington Metropolitan Transit Authority*, 238 F.Supp. 2d 160, 164 (D.D.C. 2002) articulated one test for determining whether plaintiff has met his initial burden as

follows:

> To establish a prima facie case of discrimination based on a failure to promote plaintiff must show that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) **the unfavorable action gives rise to an inference of discrimination**. *(citing Stella v. Mineta*, 284 F.3d 135, 145 (D.C. Cir. 2002).(emphasis added).

Plaintiff cannot meet his burden of showing that the alleged unfavorable action "gives rise to an inference of discrimination."

One way in which a plaintiff can raise an inference of discrimination is to show that similarly situated employees were treated more favorably. Plaintiff suggests that the placement of Mr. Brinkley as his supervisor showed such more favorable treatment. However, in order to satisfy this test, plaintiff must prove that all of the relevant aspects of his employment situation were "nearly identical" to that of the employee who he alleges was treated more favorably. Moreover, the similarity between the compared employee must exist in all relevant aspects of their respective employment circumstances. See *Barbour v. Browner*, 181 F.3d 1342, 1345 (D.C. Cir. 1999); *Mungin v. Katten, Muchin & Zavis*, 116 F.3d 1549, 1554 (D.C. Cir. 1997); *Neuren v. Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507, 1514 (D.C. Cir. 1995).

Plaintiff cannot meet this test. Mr. Brinkley was laterally assigned to assume the position of Management Program Analyst (Security Manager) GS-13 within the Facilities and Property Management Branch. Stoeher affidavit, ROI '152 at F3.14. "The duties of the position were management and oversight of the Agency's national security program, studies and analysis of all Branch programs, including operations, national and regional programs, evaluation of work processes, operating procedures and productivity, make recommendations for problem resolution

and/or redistribution of work load, and direct, **through subordinate supervisor** the activities of the Arlington operation staff.*"  Id.*  (Emphasis added) and ROI '152 F10.

Mr. Brinkley already was a GS-13, before being reassigned to the Management Program Analyst position.  ROI '152 at F3.21, F9.   Management choose to fill the position in a non-competitive fashion; however, if it had been advertised, plaintiff would not have qualified because he did not possess at least one year of experience at the GS-12 level.  ROI '152 at F3.21. *See e.g. Lutes v. Goldin*, 62 F.Supp. 2d 118, 128 (D.D.C. 1999) (stating that plaintiff's contention "is easily disposed of" because individuals receiving different grade-level upgrades are not similarly situated); *Barbour v. Browner*, 181 F.3d 1342, 1345-6 (D.D.Cir. 1999) (reversing jury verdict for plaintiff, appellate court found that despite fact that employees had same job descriptions, in fact, they had different job duties and therefore could not be comparators).

Mr. Brinkley was not similarly situated to plaintiff because he was a GS-13 and plaintiff was a GS-11.  Brinkley was not treated more favorably than plaintiff, because Brinkley's grade level was not increased, it remained the same.  Brinkley also was not similarly situated to plaintiff because he did not have the same duties as plaintiff.  Mr. Brinkley's position was created because at that time there was a need for a manager for the newly established national security program. Stoehr affidavit,  ROI '152 at F3.53-54.   Mr. Brinkley's position had a broader range of responsibilities than plaintiff's  including  responsibility  for the National Security Program as well as the management of the Arlington operations work.  ROI '152 at 6.1, F10. Among those responsibilities was supervision of plaintiff; Mr. Brinkley became plaintiff's first line supervisor. *Id.* at F3.53.  His position also had responsibility for the agency's security management program. *Id*. F10.2 .  The summary of the position's complexity included

13

> Eight separate GSA and OASAM Regional Offices are regularly dealt with for provision of services. Over 180 separate organizational units are serviced nation wide. * * *
> The significance of the widening range of possible threats (including terrorism) in a new era of proliferating technologies necessitates a viable Agency security infrastructure that insures the safekeeping of employees, facilities, vital records and the continuity of agency business.

*Id.* at F10.4-10.5. The scope and effect of the position was summarized as follows:

> Much of the employee's work is to resolve problems, or to develop new approaches for use by the agency. Recommendations are accepted as authoritative. The work requires long-term commitments, developing innovative arrangements to resolve critical problems and satisfy unusual situations and develop method that resolve administrative problems.

*Id.* at F10.5

Plaintiff's position, in comparison, primarily was limited to Arlington Office operations.

*Id.* at 1.1-10. The scope and effect of plaintiff's job was described in his position description as follows:

> Effects inter-agency coordination and ensures prompt processing, printing, and distribution of forms and other publications for agency effectiveness. Performs design and layout of all MSHA forms to reduce agency production costs. Incumbent is responsible for directing the Eastern Regional vehicle and telecommunications programs.

*Id.* at 1.10.

Plaintiff and Mr. Brinkley are clearly not similarly situated, and Mr. Brinkley's lateral transfer into the Management Program Analyst (Security Manager) GS-13 position cannot give rise to an inference of discrimination. Therefore any claim of discrimination relating to Mr. Brinkley's transfer to that position should be dismissed.

### Paragraph 11 allegations

Plaintiff also alleges in paragraph 11 of his amended complaint that as a result of the

14

investigation of Ms. Douglas by the agency's Office of Employment and Labor Relations, plaintiff was seeking remedies in addition to the transfer of Ms. Douglas, including compensatory damages. He alleges that the remedies were never implemented. Amended Complaint at ¶11.

Plaintiff has no right to remedies concerning the acts of Ms. Douglas under Title VII and the Age Discrimination Act, because he did not timely contact the EEO, as is discussed above.

To the extent plaintiff is alleging that the failure to give him additional remedies, particularly compensatory damages, is itself a discriminatory act, plaintiff has failed to allege an adverse personnel action, and thus has failed to state a claim for which relief can be granted.

In both discrimination and retaliation claims against federal employers a required element is some form of legally cognizable adverse personnel action by the employer. *Brown v. Brody*, 199 F.3d 446, 453 (D.C.Cir. 1999); *Weigert v. Georgetown University*, 120 F.Supp.2d 1, 17-18 (D.D.C. 2000 ). To establish an "adverse personnel action" there must be a significant change in the complainant's employment status--such as failing to hire, firing, failing to promote, or a decision causing a significant change in benefits. *Id.* "Reassignments without salary or work hour changes do not ordinarily constitute adverse employment decisions in employment discrimination claims." *Kocsis v. Multi-Care Management, Inc.*, 97 F.3d 876, 885 (6th Cir. 1996); *accord, Stewart v. Ashcroft*, 352 F.3d 422, 426 (D.C.Cir. 2003)("A plaintiff who is made to undertake or who is denied a lateral transfer - that is, one in which she suffers no diminution in pay or benefits - does not suffer an actionable injury unless there are some other materially adverse consequences affecting the terms, conditions, or privileges of her employment. . . .")

A materially adverse change can be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits,

significantly diminished material responsibilities, or other indices that might be unique to a particular situation. *Crady v. Liberty Nat. Bank & Trust Co. of Ind.*, 993 F. 2d 132, 136 (7th Cir. 1993); *compare with Flaherty v. Gas Research Institute* (7th Cir. 1994)(a "bruised ego" is not enough), *Koscis v. Multi-Care Mgt., Inc.,* 97 F. 3d 876, 887 (6th Cir. 1996)(demotion without change in pay, benefits, duties, or prestige insufficient), *Harlston v. McDonnell Douglas Corp.,* 37 F. 3d 379, 382 (8th Cir. 1994) (reassignment to more inconvenient job insufficient).

Failing to get compensatory damages or other remedy for alleged acts of sexual harassment cannot negatively change plaintiff's salary, benefits or materially and adversely affect the terms, conditions, or privileges of his employment. Thus, he has failed to state a claim upon which relief can be granted.

**6. CURED ALLEGED ADVERSE ACTION IS NOT ACTIONABLE**

In his amended complaint plaintiff claims as a retaliatory action that "On or about March 3, 2003, after failing to receive a requested promotion, plaintiff spoke with Joseph Stormer who said that an offer of settlement . . . was withdrawn because Plaintiff had an EEO case pending. . . ." Amended Complaint at ¶11.

The District of Columbia Circuit, as well as the Fourth Circuit, has ruled that an employer may cure an adverse employment action before that action is the subject of litigation and thus, avoid liability for the action.

> We agree with the four other circuits to have addressed the question: An employer may cure an adverse employment action -- at least one of the sort here alleged -- before that action is the subject of litigation. *See White v. Burlington Northern & Santa Fe Railway Co.*, 310 F.3d 443, 452 (6th Cir.2002) (reinstatement that "puts the plaintiff in the same position she would have been in absent the suspension constitutes the 'ultimate employment decision,' thereby negating a potentially adverse intermediate employment decision"), *reh'g en banc granted and judgment*

*vacated*, 321 F.3d 1203 (2003); *Pennington v. City of Huntsville*, 261 F.3d 1262, 1267-68 (11th Cir.2001) (no adverse employment action where plaintiff initially denied but shortly thereafter received promotion); *1294 **447 *Brooks v. San Mateo*, 229 F.3d 917, 929-30 (9th Cir.2000) (retaliatory lowering of performance evaluation not adverse employment action where evaluation was "on appeal" and might have been corrected if plaintiff had not quit her job while appeal was pending); *Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir. 1998) ("We need not address whether a mere delay in promotion constitutes an adverse employment action because [plaintiff] received the promotion with retroactive pay and seniority"); *cf. Page v. Bolger*, 645 F.2d 227, 233 (4th Cir.1981) (en banc) ("there are many interlocutory or mediate decisions having no immediate effect upon employment conditions which were not intended to fall within the direct proscriptions of ... Title VII").
As the district court reasoned:
Permitting employers the opportunity to correct workplace wrongs prior to litigation is the objective of the EEO process. If a plaintiff were permitted a right to sue even if his or her employer had corrected the grievance, there would be absolutely no incentive for employers to make adjustments for past conduct during the EEO process. Mem. Op. at JA 60, *citing Martini v. Federal Nat'l Mortgage Ass'n,* 178 F.3d 1336, 1338 (D.C.Cir.1999) (remanding to district court with instructions to dismiss plaintiff's suit as untimely because "Title VII requires complainants to wait 180 days before suing in federal court so that the Commission may informally resolve as many charges as possible").

*Taylor v. Small,* 350 F.3d 1286, 1293-1294 (D.C.Cir. 2003).

Plaintiff made initial contact with the EEO concerning this matter on March 31, 2003, and had his initial interview with an EEO Counselor on April 24, 2003. ROI '111 at B-1-1 ¶2. The EEO counselor contacted agency officials on April 24 and 25, 2004. *Id.* at B-1-3 to 4. On July 24, 2003, plaintiff was retroactively promoted to GS-12, Step 3, effective June 30, 2002, and he received back pay from June 30, 2002 to June 29, 2003. Hackney Dec. at ¶7 and Ex H4.

Since defendant corrected plaintiff's grievance prior to litigation and has paid him back pay, the delay in his promotion was not an adverse employment action. Therefore any claim relating to that promotion should be dismissed.

17

## CONCLUSION

For the reasons set forth above, plaintiff's amended complaint should be dismissed or in the alternative, summary judgment should be entered for defendant.

Respectfully submitted,

_____
KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney

_____
R. CRAIG LAWRENCE, D.C. BAR # 171538
Assistant United States Attorney

_____
RHONDA C. FIELDS
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C. 20530
202/514/6970