F03-11-111

**U.S. Department of Labor**
Office of the Assistant Secretary for Administration and Management
Civil Rights Center

**Formal**
complaint of discrimination

*Note: Complete this form, sign it, and send it in accordance with instructions from your EEO Counselor to Director, Civil Rights Center.*
*See back for additional information or for help in completing this form.*

**1a. Name**
Miller A. Ridgely, Jr.

**2. Job title and grade**
Compliance Specialist, GS-12

**3a. Home address**
16920 Matawoman Dr.
Waldorf, MD 20601

**3b. Office address**
MSHA
1100 Wilson Blvd
Room 2564
Arlington, VA 22209-3939

**4. Telephone, including area code, extension**
home 301/372-6080
office 202/693-9724

**5. Bases of your complaint** (Check as appropriate and specify where a blank is provided)

- [x] race _____
- [ ] color _____
- [ ] national origin _____
- [x] reprisal CRC-03-01-152 and TM-03-11-110

- [ ] religion _____
- [x] age _____
- [ ] disability _____

- [x] sex _____
- [ ] sexual orientation* _____

*Please specify the prior EEO activity in which you were involved and the date.*

*Protected by Executive Order 13087, not by federal statute. Claimants on this basis may request a final decision, but have no hearing or appeal rights.*

**6. Specify the action(s) that gave rise to this complaint.** (Please use the back of this page if needed, and check here ☐ if continued on back.)

Date(s)        Specific action(s)

PLEASE SEE ATTACHED FOR ITEM #6

**7. Please specify remedy(ies) you believe will resolve your complaint.**

PLEASE SEE ATTACHED FOR ITEM #7

**8. Date notice of right to file was issued**
MAY 19, 2003

**9. Counselor's name**
LINDA BLUMNER

**10. Counselor's telephone**
202/693-6513

**11. Have you filed a complaint on this same matter with:**
- [ ] Administrative grievance system?
- [ ] A union (specify _____)?
- [ ] Merit Systems Protection Board (MSPB)?

**If yes, date(s) of other filing(s)**

**12a. Representative's name**
BLAKE SMITH

**2b. Representative's address**
US DEPARTMENT OF LABOR
200 CONSTITUTION AVE NW
LOCAL 12, RM N-1501
WASHINGTON, DC 20210

**12c. Representative's telephone**
202/693-8375

**Date**
MAY 27, 2003

**Signature**
Miller A. Ridgely Jr.

JUN 3 2003

**CRC use only**  Date received by CRC staff

Date issue

F#

A-1


**When can you file a formal complaint?** When your EEO Counselor notifies you that your informal complaint cannot be resolved and provides you notice of your right to file a formal complaint, you have *15 calendar days from receiving that notice* to complete, sign, and submit this form to the Director, Civil Rights Center (CRC) or to the Secretary of Labor. Please note that the Secretary's office will forward the complaint to CRC, which may delay processing of your complaint.

**What happens next?** Only allegations that have been presented for EEO counseling will be considered for investigation at the formal stage. *If you wish to amend your formal complaint* during processing with allegations "like or related to" issues you raised in your informal complaint, *you must* request an amendment by letter to the Director, Civil Rights Center.

---

**6, continued.** Use this space to continue #6 from the face of this form.

**Date(s)**    **Specific action(s)**

---

**Definitions**

**race**    Racial group. For example:

| | |
|---|---|
| **American Indian or Alaska Native** | A person having origins in any of the original peoples of North, South, or Central America, and who maintains tribal affiliation or community attachment. |
| **Asian** | A person having origins in any of the original peoples of the Far East, Southeast Asia, or the Indian subcontinent, including, for example, Cambodia, China, India, Japan, Korea, Malaysia, Pakistan, the Philippine Islands, Thailand, and Vietnam. |
| **black or African American** | A person having origins in any of the black racial groups of Africa. |
| **Native Hawaiian or other Pacific Islander** | A person having origins in any of the original peoples of Hawaii, Guam, Samoa, or other Pacific Islands. |
| **white** | A person having origins in any of the original peoples of Europe, the Middle East, or North Africa. |

**color**    One's skin color or complexion, for example, light-skinned or -complexion, dark-skinned or -complexion.

**national origin**    An individual's (or his or her ancestor's) place of origin; or having the physical, cultural, or linguistic characteristics of a national origin group. For example: Egyptian, Iroquois Nation, Hispanic. (Hispanic, Latino, or Spanish origin refers to persons of Cuban, Mexican, Puerto Rican, South or Central American, or other Spanish culture or origin, regardless of race.)

**religion**    One's religious practice or belief. Examples: Baptist, Buddhist, Catholic, Hindu, Jewish, Moslem.

**age**    40 and above

**disability**    A physical or mental impairment which substantially limits one of more of a person's major life activities.

A-2

**Number 6. Specify the action(s) that gave rise to this complaint.**

In light of the following, I am filing a formal complaint in regard to the act of reprisal that prompted Case No. IM-03-11-110, and in support to the merits and history of events that support CRC-00-01-152 and the Local 12 Grievances for which the acts of reprisal were made.

The informal claim (Case Number IM-03-11-110) was born out of the most recent act of reprisal by MSHA management that being the pulling back of a performance based promotion. This act was the most recent in a long line if acts of reprisal that stem from my originally filing an EEO complaint (CRC-00-11-152), and Local 12 Grievances. These grievances include, but are not limited to, acts of severe sexual harassment and physical abuse.

MSHA management's refusal to conduct mediation based on their position as stated in the attached letter dated May 19, 2003, is an attempt to confuse the issues and ignore the history and the events that are the bases of the above mention complaints.

It appears that MSHA is attempting to do what it has done all along, ignore and confuse the issues, and combine unrelated issues to obtain a remedy. This latest attempt to ignore and confuse the issues, and thus deny mediation, is on it face a continued act of reprisal.

Though I am grateful for the promotion I received in April 2003, this promotion was a result of my valued performance at that time and recognized by my now immediate supervisors. This promotion should not be viewed as a remedy or a reward for restitution to the merits of CRC-00-01-152, the Grievances, or informal complaint IM-03-11-110.

MSHA (letter May 19) claims *"I was promoted to the GS-12 level, effective April 25, 2003, and since both of the EEO cases pending (CRC 00-01-152 and IM 03-11-110) would have focused on the issue of my promotion to the GS-12, that the purpose of mediation has been achieved."*

MSHA's position clearly ignores and confuses the events that have occurred over a period of several years and the neglect to my career that these events have created.

The subject promotion was earned by me through valued performance. It should not be looked upon as a reward or restitution by the agency for its acts of reprisal or its failure to comply with the law.

The pulling back of the promotion that prompted my filing the informal complain (IM-03-11-110) is only the most recent act of reprisal in a long line of acts of reprisal by the agency.

One would hope that a third and impartial party would review the above mention complaints (CRC-00-01-152, the Grievances, and IM-03-11-110), and recognize the neglect and abuse that has occurred over several years. One would also hope that a third

1

A-3

and impartial party would attempt to effect remedies that would be based on the results that this neglect and abuse has created over this long period of time.

A simple cursory review of the vast majority of documentation supporting CRC-00-01-152, the Grievances, and IM-03-11-110 clearly outlines that an attempt to make whole in these cases would warrant more that what a mere one grade promotion several years after the fact could remedy.

At the very least, one would think that the remedies for restitution should include making my career whole.

If a third and impartial party would simply 'Do the Math', one would recognize that in order to make just restitution, one would have to factor into the equation the documented events, abuse, and the neglect stemming back to January 1999 and beyond.

This third and impartial party should then recognize that this neglect and abuse has resulted in a loss of time in grade, steps, and opportunities to apply for vacancies at higher levels within and outside the agency for a period of over seven years. Additionally, one would also have to recognize that these events would most certainly create not only tangible and financial hardships, but physical and mental hardships as well.

The merits of CRC-00-01-152, the Grievances, and IM-03-11-110 clearly show that I have been subjected to obvious acts of discrimination, neglect, abuse, and reprisal and that these acts have all but been ignored by MSHA management. This is especially true in regard to the issues concerning the sexual harassment that management was well aware of, yet chose not to address for a period of almost two years. Management's neglect to address this very serious issue forced me (and others) to work in this unfavorable environment for this long period of time as it took a toll on my physical and mental health and career. Once addressed, management took steps to remove the discredited supervisor, yet failed to repair the damage the supervisor inflected, and in fact continued to punish me with continued acts of reprisal.

The merits of these complaints further show that these acts were levied at the hands of a select few managers that took it upon themselves to circumvent the rules and regulations created to provide and protect fairness and equable treatment for every government employee in the federal workplace.

Based on the above, I am filing this Formal Complaint for the reasons of continued reprisal, and to seek address of the merits of CRC-00-01-152, the Grievances, and IM-03-11-110, and for the hope of a fair and equable remedy of the concerns contained in these matters.

2  A-4

**Number 7. Please specify remedy(ies) you believe will resolve your complaint.**

1. Review the merits of case numbers CRC-00-01-152, IM-03-11110, and the Grievances filed through Local 12 which are the bases for which the acts of reprisal were made, and to give fair and equable consideration to the merits in these cases.

2. Fulfill the original remedies sought as documented respectively in each of the above cases/grievances pending, and any and all other remedies deemed appropriate.

3. Make my career whole using a formula that encompasses the entire time period that the above cases address, stemming back to and beyond January 1999.

4. Make fair and equable restitution in regard to both the tangible and intangible harm that has resulted to my career, and my physical and mental health.

5. Ensure that no further acts of retaliation or reprisal will take place for the remainder of my government career, and that I be afforded the same considerations that are afforded to all federal employees by law.

A- 5

## EEO COUNSELOR'S SUMMARY REPORT [IM01-]

1. Complainant's Name  Michel A. Ridgely, Jr.

   Job title/series/grade  GS-11/07    Civil Penalty Compliance Specialist

   Place of employment  MSHA

   Work phone  202/ 693-9724

   Home phone  301/ 372-6080

   Home address  1100 Wilson Boulevard, Arlington, VA 22209-3939    Room 2504


2. Chronology of EEO counseling  Complaint received 4/8/03

   Complainant initially contacted  3/31/03

   Date complaint assigned to counselor  4/23/03

   Date of initial interview        4/24/03

   Date of alleged discriminatory event 3/3/03

   45th day after event

   Reason for delayed contact beyond    N/A
   45 days, if applicable
   Date counseling report requested

   Date counseling report submitted    May 13. 2003

3. **Basis(es) for alleged discrimination** (check as appropriate and specify in the blank provided)

   ❏  **race** _____      ❏  **age** _____

   ❏  **color** _____        ❏  **mental disability** _____

   ❏  **national origin** _____      ❏  **physical disability** _____

   ❏  **sex**    _____      ❏  **religion** _____

   ✗  **reprisal  CRC Case # 00-11-152**
                *(Identify prior EEO activity in which complainant was involved and the date.)*
   ❏  **sexual orientation***

\*Sexual orientation is protected by Executive Order 13087, not by federal statute.  Complainants who file on this basis may request a final decision from CRC, but are not entitled to an EEOC hearing or to appeal their decision to EEOC or in court.

*Informal Complaint of [Complainant name], page 1 of 3*

B-1-1    R- 5/13/03

4.    **Description of the Issue(s)counseled**

Whether MSHA discriminated against Michel Ridgely on the basis of reprisal when on March 3, 2002 the Chief of Human Resources informed him that the Agency had "pulled back" his (Ridgely's) promotion to a GS-12.

5.    **Remedy(ies) requested:**  Make whole relief, including compensatory damages.

6.    **EEO counselor's checklist** (CRC-2, Rights and Responsibilities Letter)

On May 6, 2003, I gave the complainant a copy of the rights and responsibilities letter and discussed those rights and responsibilities with him.   Also because he had elected mediation, Mr. Ridgely signed the Agreement to Extend Counseling Form to provide up to an additional 60 days to attempt to resolve his complaint through the EREC (mediation) process.  He has a formal complaint CRC# 00-11-152 that he wants combined in the mediation efforts.

7.    **Summary of Interviews**

*Name, title, organization of interviewee  Michel A. Ridgely, Jr. GS-11/07, MSHA*

*Spoke with Mr. Ridgely by telephone on April 24, 2003.  Complainant explained the circumstances of his complaint, a long story of delay behind the promised promotion to GS-12.*

*Date of interview  4/24/03*

*Brief summary of facts conveyed*

Mr. Ridgely alleges that his manager and Deputy Director indicated on January 31, 2003 that Ridgely would receive the promotion to GS-12 in the following month, February 2003.  After reviewing his Earnings and Leave Statement on March 3, 2003, Complainant called Joe Stormer, Chief, Human Resources Division to learn the reason for the promotion delay. Ridgely states that Stormer asked him to come to the HR Office with his supervisor. Ridgely explained that his supervisor was not available and Stormer asked him to come to HR anyway.  Once there, Ridgely alleges that Stormer asked him what it would take to resolve Ridgely's EEO complaint and grievances so that he (Stormer) could give him his promotion.

Ridgely stated that he told Stormer what it would take and Stormer asked him to go home and sleep on it, then see him (Stormer) in the morning so they could get it resolved.  The next day, Ridgely

*Informal Complaint of [Complainant name], page 2 of 3*

B-1-2

informed Stormer that his actions in delaying the promotion were unlawful. Additionally, Ridgely told Stormer that he should contact his Union Representative Blake Smith if he wished to discuss the matter any further. Ridgely reported that Stormer also might have spoken to Carolyn James, the Union AVP for MSHA at the time.

Ridgely explained that the promotion had been the subject of a prior agreement resolving a union grievance. Ridgely provided documentation of his grievances and this settlement in the attachments.

*Name, title, organization of interviewee Joseph Stormer, Chief, Human Resources*

*Spoke with Mr. Stormer by telephone.202/693-9857*

*Date of interview 4/24/03*

*Brief summary of facts conveyed*

Spoke to Mr. Stormer who related that Ridgely had come down to HR and relayed the events that had occurred to him over the years. Seemed that he was in the wrong place at the wrong time. Mr. Stormer related that he offered Ridgely a complete settlement dating back to August 12, 2002. Stormer said that instead of piecemealing this (EEO complaint and grievances) they could settle it by promoting back to the date of the audit. Mr. Stormer explained that the supervisor sent in the promotion papers and that he (Stormer) had recently spoken to EEO Director Michael Thompson and that he would now process the WEBPAR action effective 2/9/03, making the promotion retroactive.

Stormer said that Union Rep. Salwa Elbassioni had intervened in the arbitration of one grievance and asked that he not speak to Complainant about it because it was now Union business. Stormer felt that this approach was simply cutting the matter into pieces.

*Name, title, organization of interviewee Keith Watson, Deputy Director, Office of Assessment*

*Spoke with Mr. Watson by telephone on April 25, 2003. Watson explained the promotion process on Ridgely's GS-12.*

*Date of interview 4/25/03*

*Brief summary of facts conveyed*

According to Watson, Myra James initiated Ridegely's promotion action and he approved it based on Ridgely's performance. Watson stated that Myra and he met with Ridgely on January 31, 2003 and advised him that we were initiating the promotion action. He said that previously they had asked

*Informal Complaint of [Complainant name], page 3 of 3*

Ridgely to improve in certain areas and he had accomplished the improvements.

Watson said that the action was entered in the WEBPAR but that the entries had been changed in the system and the action was gone now when he checked on it. He related that he could observe that HR on April 24 and 25 had revisited the action. The effective date of the action was to have been February 9, 2003. Some time after Myra and he (Watson) entered the WEBPAR action, HR referred the action back to us. It came back to Diane Gruver, the office's Management Officer. Normally, Watson stated, if HR had an issue they would raise it and discuss it with us. In this case, Watson said, the action was simply returned. Watson said that he was unaware of any reason given, it was just returned. Subsequently, Watson learned that a grievance was open and someone in HR was trying to relate the two.

8. **Summary of informal resolution attempts where complainant elected traditional counseling**
   Complainant elected the EREC process. Respondent official reported that based on his conversation with MSHA's EEO staff (Darlene Warren and Michael Thompson), he was processing the promotion that day, April 25, 2003, and back-dating it to February 9, 2003 in the WEBPAR action.

8. Summary of informal resolution attempts where complainant elected mediation
   I explained the ADR process to complainant Ridgely during the initial telephone interview on April 23, 2003. He elected mediation.

   I made no attempts at resolution because complainant had elected mediation.

_____
Counselor's signature

Linda B. Blumner
_____
Counselor's name

_Informal Complaint of [Complainant name], page 4 of 3_

B-1-4

200 Constitution Avenue, N4123
<u>Washington, DC 20210</u>
Counselor's office address

<u>202/693-6513</u>
Counselor's telephone #

<u>May 13, 2003</u>
Date report completed and signed

**Attachments**

1.    Informal complaint

3.    ADR election form, if applicable
4.    Complainant's Grievance Documentation

B-1-5

September 10, 2003

Dear Ms. Wood,

Attached please find my affidavits submitted in regard to the reprisal case. I have also included for your review and convenience, a copy of the documentation related to both the original EEO case and the Local 12 grievance. If I can be of any further assistance, please let me know. You may contact me at 202/693-9724. I thank you in advance for your attention to this matter.

Thanks!
Michel Ridgely

F-1-1

## COMPLAINANT=S AFFIDAVIT

I, (name) __Michel A. Ridgely, Jr._____

am (check one): an employee of __X__ / applicant to ____ / former employee of ___ / the U.S. Department of Labor's:

(Agency) ___Mine Safety and Health Administration_____

(Office) ___Office of Assessments/Civil Penalty Compliance Office_____

(Division) ___Civil Penalty Compliance Office_____

(Branch) ___Special Collections Group_____

Located in (city and state) __Arlington, Virginia_____

In the capacity of (show both your organization title and the classification of your job, if different):

_____Civil Penalty Compliance Specialist_____

Grade __12/4__ between (date) _____ and (date)_____

My telephone number during working hours is: __202/693-9724_____

I HAVE BEEN ADVISED OF THE FOLLOWING:

I have an obligation to cooperate fully with the investigator who has been assigned to conduct an impartial and appropriate investigation of my complaint of discrimination. Therefore, I must provide a statement for the investigative record that is true and complete to the best of my knowledge and belief and fully addresses the issues accepted for investigation. My statement must be specific with regard to names, dates, places, circumstances and related events, and disclose my firsthand knowledge of any directly related information that is relevant to the issue(s). My statement, along with my Informal Complaint, Counselor's Summary Report, Formal Complaint, and the "issue accepted for investigation" shall serve as the basis of the investigation. While I may voluntarily submit any additional documents or information to the investigator for consideration, it will be the investigator's responsibility to determine what evidence shall actually become part of the investigative report. If there are any documents or facts that substantiate my allegations, I must provide them to the investigator, or make them known to the investigator. I may suggest witnesses to be interviewed by the investigator. However, the investigator will decide which witnesses to interview based on relevant information he or she feels will be furnished.

My statement is made under oath (or affirmation), without a pledge of confidentiality, in accordance with the rules, regulations, policies, and procedures of the Equal Employment Opportunity Commission and the Department of Labor. This means that any employee(s) whom I accuse of discrimination or other acts of impropriety may be shown this statement or relevant portions and be given an opportunity to respond. Agency officials responsible for processing complaints of discrimination will have access to the entire investigative report. If discrimination is found, any employee accused of discrimination will have an opportunity to review a sanitized version of the report. If discrimination is found and disciplinary action is proposed, the employee accused of discrimination will have an opportunity to review the report in its entirety without deletions. Participants in the discrimination complaint process are specifically protected by law and the EEO regulations from any acts of reprisal, discrimination, coercion, harassment, restraint, or inference for their participation in the investigation and other phases of complaint processing.

I have the right to be represented by a person of my choice during presentation of my complaint and preparation of my statement (so long as my choice does not result in a conflict of interest). I have ___✓___ have not____ chosen a personal representative at this stage of my complaint. In the event I have not chosen a representative but obtain a representative at a later date, I will advise the investigator and the Director of the Civil Rights Center in writing.

I have the right to review my statement prior to signing it, and may make initialed corrections if it is incomplete or inaccurate. I have a right to receive a copy of the signed statement.

Having reviewed the preceding information with the investigator, I solemnly swear or affirm that the statement to follow is true and complete to the best of my knowledge and belief, and fully addresses the issues and allegations raised by me in my EEO complaint.

Initials: _MR_

F-1-2

Affidavit of: _____ Michel Ridgely _____

**Question Number 1.  Your name.**

My name is Michel A. Ridgely, Jr.

**Question Number 2.  Your Agency, Office, Division and/or Branch.**

My Agency is the Mine Safety and Health Administration.

My Office is the Office of Assessments

My Division is the Civil Penalty Compliance Office

My Branch is the Special Collections Group.

**Question Number 3.  Your office address and telephone number.**

My office address is 1100 Wilson Boulevard, Arlington, Virginia – Room 2504

My telephone number is 202/693-9724

**Question Number 4.  Your job title and grade.**

My job title is Civil Penalty Compliance Specialist

My grade is GS12

Affidavit of: _____ Michel Ridgely _____

## Question Number 5. Your race

My race is White

## Question Number 6. Your date of birth, and age at the time of the event.

My date of birth is August 8, 1951, and my age at the time of the event was 51 years.

## Question Number 7. Your sex.

My sex is Male

## Question Number 8. The protected EEO activity(ies) in which you participated, including date(s).

I filed an EEO informal complaint on July 27, 2000, followed by a formal complaint dated September 26, 2000. This matter was accepted by the CRC for investigation on March 21, 2001 under CRC Case No. CRC 00-11-152. Additionally, and because of continued acts of reprisal, adverse actions and sexual harassment, I filed an AFGE Local 12 Union grievance on May 15, 2001. This grievance was filed based on a number of issues concerning the misconduct of my (then) immediate supervisor, which included, but not limited to, indignities such as being physically slapped in the face, having my trousers from the crotch to the knee being used as a hand wipe, being subjected to various unsolicited offensive verbal comments which were sexual in nature, and improper touching. It should be noted, that these acts were carried out in the presence of witnesses.

Affidavit of: _____ Michel Ridgely _____

**Question Number 9. Describe in detail the adverse action(s) taken against you because of your race, age, sex, and previous EEO activities.**

Over the course of events since I filled my original EEO claim back in July 2000, and the Local 12 grievance in May 2001, I have been subjected to a vast number of actions that were retaliatory in nature. The record clearly shows these actions, and the record can be reviewed for verification. The most recent act of reprisal was that act of pulling back an earned promotion because I had an EEO Complaint and Grievance pending. On March 3, 2003, I was informed of this action during a telephone conversation with Mr. Joe Stormer, representing MSHA Management in his capacity as Chief, Human Resources Division.

During the telephone conversation, Mr. Stormer invited me to his office. Once in his office, Mr. Stormer attempted to manipulate me into settling my cases by holding the earned promotion over my head. A promotion that was unrelated in any way to the cases he was attempting to have me settle.

**[EXHIBIT #1]** shows that on March 3, 2003, I had a telephone conversation with Mr. Joe Stormer (Chief of MSHA's Human Resources Division (HRD)). During the conversation, Mr. Stormer informed me that because I had grievances pending, Management had taken steps to pull back my earned promotion. While on the telephone, Mr. Stormer asked me come to his office. Once in his office, Mr. Stormer and I spoke about my Union grievance filed in May 2001 and the EEO complaint filed in July 2000. In fact, we discussed both cases to such a degree that names, and situations were both discussed in depth. Specifically, we spoke of Ms. Melissa Stoehr and her role in my EEO complaint. We spoke of Mr. Travis Munnerlyn, and of his role in the EEO complaint. During the discussion about Mr. Munnerlyn, I informed Mr. Stormer that Mr. Munnerlyn had been promoted several time while under Ms. Stoehr's supervision even though she had knowledge that he had been involved in suspicious procurement activities. At this juncture, Mr. Stormer stood up and reviewed a computer printout that was located in his bookshelf (I believe this printout showed the grade status of employees at MSHA). He reviewed the printout to determine if my statement about Mr. Munnerlyn's grade level was correct. After reviewing the printout, Mr. Stormer commented to me "I'm not going to say you're right; I'm not going to say you're wrong", but the facial expressions he made, strongly indicated that to him my statement was correct.

We discussed Ms. O'Keitha Douglas and her role in the Union Grievance with regard to the sexual harassment and her inappropriate conduct. At this time, Mr. Stormer stated that my cases had been handled poorly by HRD and he asked me who was the HRD employee handling the matters. I told him I believed it was Ms. Judy Mitichell, MSHA's Labor Management Relations Specialist. He shrugged his shoulders, and rolled his eyes and stated "what a mess"!

He then asked what it would take to get this whole thing behind us. I told him that I wanted my career to be made whole, and that I would like to be where I would have been if I had been treated fairly and equably all along. At this time, he strongly suggested that I accept his offer of a settlement for a GS12 retroactive back to August 2002. I told him that my complaints and the merits of the complaints were very serious in nature and that the cases must have the opportunity to be properly addressed in the appropriate forum. I further told him that the concerns in the complaints stem back to January 1999 and beyond, and that the complete history needed to be considered in any equation for making my career whole. I told him that everyone mentioned in the complaints who had participated in acts of wrongdoing had seen little to no disciplinary action, but had seen substantial growth in their careers, both during and after their participation in the wrongdoing. I further stated that during this same time, my career had stalled, and that the reasons it had stalled was due to actions taken and addressed in my EEO complaint and Grievance. He again offered a settlement back to August 2002, saying we would like to promote you, it is up to you. He told me to sleep on it and let him know the next morning.

The bottom line to the conversation held on March 3, 2003, was that Mr. Stormer was holding off on the earned promotion so he could reach an agreement to settle my complaints and get everything behind us. He in essence was using the earned promotion as a carrot to gain a quick and simple end to my complaints. This on its face was reprisal, and a continuance of previous acts of reprisal that have deprived me of earned advancement and opportunities for better jobs, that extends back to January 1999 and beyond. This act of reprisal continued to compound the already established neglect and abuse that has occurred over several years. Mr. Stormer fully knowing the serious circumstances surrounding my claims was in essence continuing to punish me for doing what the law, and public policy, requires and protects.

As additional support to this question, Ms. Carolyn James, the (then) Agency Vice President for Local 12 had a conversation with Mr. Stormer the morning of March 4, 2003. During the conversation with Mr. Stormer, Mr. Stormer admitted to her that MSHA pulled back the earned promotion because I had cases pending. Ms. James can be reached on 202/693-9564.

Michel Ridgely

I have reviewed this statement, which consists of ___9___ pages, and hereby solemnly ____ swear ____ affirm that it is true and complete to the best of my knowledge and belief. I understand that the information I have given will not be held confidential, will become a permanent part of the record of investigation, and may be shown to any necessary party.

_____                    _SEPT. 10, 2003_
(Signature of Affiant)                                              (Date)

~~Signed before~~/received by me at (Street and City) _____

on this ____ day of _____, 20_____

_____
(Signature of Investigator/Witness)

CRC Form 10
(Rev. 3/03)

F-1-12

# DOL Local 12 Grievance Form

Grievant's Name: Michael Ridgley                          Agency: MSHA

### Step 1 Information

Official Presented To:          A. Keith Watson

Local 12 Representative:        Gerry Gunn

Date of Alleged Violation:      February 21, 2002 and on-going

Basic Facts:

At approximately 11:00am on February 21, 2002, O'Keitha Douglas came into the grievant's office and began disrupting the grievant and another employee by attempting to engage in playful activities. Upon seeing the grievant's personal tape-recorder on his desk (which was clearly turned off), DOUGLAS grabbed it and ran out of the office with it. The grievant pursued DOUGLAS and confronted her in the file room where she had turned the recorder on and was listening to the grievant's private and personal tape.

The grievant tried to get his tape recorder back from DOUGLAS, who resisted by moving her arms around. Ultimately the grievant was able to grasp his tape recorder (without touching DOUGLAS) and DOUGLAS released the tape recorder. DOUGLAS acted as though the episode were funny.

During this episode, DOUGLAS had full knowledge that she would later in the day charge the grievant with annual leave for an hour that he spent speaking to an EEO counselor on the previous day.

DOUGLAS has a history of physical violence toward staff, stealing food and other personal belongings from staff, and using unsolicited, vulgar language to describe her genitalia to male employees.

Signature of Grievant _____        Date _02/22/02_____

                                                        Date of receipt and initials: _SKW 2/22/02_

_____

### Step 2 Information

Official Presented To:

Local 12 Representative:

Additional Information:



Alleged Violation of Contract
Articles or other Regulations: _____

Remedy Sought:



Signature of Grievant _____        Date _____

AVP Initials: _____                    Date of receipt and initials: _____

                                                        G-5-22

NOV 2 5 2002

Michel A. Ridgely, Jr.
16920 Mattawoman Lane
Waldorf, Maryland 20601

The Honorable Steny Hoyer
U.S. House of Representatives
6500 Cherrywood Lane
Greenbelt, Maryland 20770

Dear Congressman Hoyer:

Please allow me to introduce myself. I am a federal employee who has worked for the U.S.
Department of Labor, Mine Safety and Health Administration (MSHA) for over thirty-one years.
I was born and raised in Maryland and currently reside in lower Prince Georges County near the
town of Waldorf. I and my family have been avid supporters of you and your office since the
first time you ran for office. I am writing you in the hope of receiving your support in dealing
with a very difficult situation that has engulfed my federal career, and which has consequently
damaged my financial standing, my self esteem, and my overall health.

In July 2000, I was selected and began working as a GS-11 Civil Penalty Compliance Specialist
with the Office of Assessments for MSHA. This position has a career ladder promotion potential
GS-11/12. In June 2001, approximately one year after beginning my tenure in the position, I
received a satisfactory performance appraisal, but was denied the career ladder promotion to a
GS-12. At the time of this writing, I remain a GS-11.

The reasons for management's failure to promote me are not performance based, but due to
reprisal for an AFGE Local 12 grievance I filed in May 2001.

Specifically, during my first two years with the Office of Assessments, I was subjected to and
endured numerous indignities at the hands of my (then) immediate supervisor. These indignities
included, but were not limited to, being physically slapped in the face, having my trousers from
the crotch to the knee used as a hand wipe, being subjected to various unsolicited offensive
verbal comments which were sexual in nature, and improper touching. In May 2001, I filed an
AFGE Local 12 grievance to obtain relief. This grievance, though filed by me, was supported by
a large number of fellow co-workers, many who had witnessed these improper acts.

In early September 2001, the grievance was well on its way to being referred to arbitration. Just
prior to referring the grievance to arbitration, management at the Assistant Secretary for Mine
Safety and Health level requested that a Departmental-level investigation be conducted on the
merits of the grievance. Approval was given by me and my representatives to allow the
investigation and to allow management an opportunity for a low key, yet satisfactory, conclusion

G -5-87

for all involved.

During the approximate six months of October 2001 through March 2002, members of the Department of Labor's Office of the Assistant Secretary for Administration and Management conducted the investigation. The investigation, which included the interviewing of a number of employees within MSHA's Office of Assessments as well as other MSHA employees, was concluded in March 2002. Once the investigation was closed, the investigators met with Mr. David Lauriski, Assistant Secretary for Mine Safety and Health, and select members of his staff, to share the findings of the investigation and to make recommendations for a viable resolution to the concerns of the grievance.

As a result of the Department's recommendations, the supervisor was immediately relocated to another program area and stripped of all supervisory responsibilities.

In June 2002, an audit of my position and performance was conducted. On July 30, 2002, it was determined that I was performing at the GS-12 level.

Management has failed to promote me based largely on notes submitted by the removed and discredited supervisor. In fact, even though I am currently well within my third year in the position, the career ladder promotion to the GS-12 appears unlikely. This attitude is solely retaliatory in nature and is derived primarily from members of second-level management who supported the removed supervisor.

On September 30, 2002, I submitted a Freedom of Information Request (FOIA) requesting copies of all information maintained by the Department of Labor and the Mine Safety and Health Administration pertaining to (1) the above mentioned investigation, (2) the investigation findings, (3) the recommendations made.

On October 16, 2002, I received an interim reply acknowledging receipt of my FOIA request. To date, I have received no additional responses to my request.

As a result of the tangible and emotional losses I have suffered, I plan to take legal action both personally and through the EEOC. In order to satisfactorily initiate legal action it would be appreciated if your office could assist me in obtaining the information requested in my FOIA of September 30, 2002.

I believe the FOIA information I have requested will substantiate the cruel and unprofessional conditions under which I was required to work for almost two years and the fact that I am now being retaliated against for seeking relief from such behavior. Once you have seen this information, I feel certain you will also agree with my contentions. Therefore, I also request and would most appreciate your office assisting me by bringing my circumstances to light at the highest levels of the Department of Labor and seeking their correction of this deplorable labor relations situation.

G-5-88

To assist you, I have attached copies of the above-mentioned correspondence in addition to names, titles and addresses.  If I can be of any additional help to assist you so that you can assist me, I can be reached during the day on 202/693-9724.

I thank you in advance for any help you can provide.

Sincerely,

Michel A. Ridgely, Jr

Q-5-89