**APPENDIX**

|  | Page |
|---|---|
| Declaration of Michel Ridgely | 1 |
| E-mail from Haymond to Ridgely dated 1/29/99 | 5 |
| E-mail from Ridgely to Hinderliter dated 7/12/99 | 6 |
| E-mail from Hinderliter to Ridgely dated 3/27/99 | 7 |
| E-mail from Stoehr to Ridgely dated 11/18/99 | 8 |
| Memo from Taylor to Webber dated 7/25/01 | 9 |
| Letter from Ridgely to Mayer dated 3/22/02 | 10 |
| E-mail from Ridgely to Stormer dated 3/14/03 | 12 |
| Letter from Auletta dated 9/5/03 | 14 |
| Letter from DOL to Ridgely dated 2/23/05 | 15 |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MICHEL RIDGELY** ) | |
|     Plaintiff ) | |
| ) | |
| **v.** ) | Civil Action 05-1033 (GK) |
| ) | |
| **ELAINE CHAO,** ) | |
|     Defendant ) | |

**DECLARATION OF MICHAEL RIDGELY**

**1.** I am the Plaintiff in the above-captioned case and have personal knowledge of the matters stated below.

**2.** Pamela Wood and Linda Blumner were my EEO counselors. They conducted the investigation from the civil rights office of the U.S. Department of Labor located at 200 Constitution Avenue NW, Washington DC. I spoke to them over the phone and I went to their offices to complete paperwork. Upon information and belief, all the records related to the discriminatory conduct are maintained and administered in the civil rights office.

**3.** Upon information and belief, my official personal file (OPF) contains no records related to the discriminatory allegations I have made, and it would be contrary to agency policy to keep such records in my OPF.

/

**4.** Melissa Stoehr became my immediate supervisor in September of 1997 and she began a process of blocking my promotion potential. I became so distraught at the treatment that I considered leaving the DOL. Richard Rose (Division of Management Services, Chief) intervened and told me in January of 1999 that if I stayed with MSHA, I would be placed in a supervisory position at a GS11, but I would be made a GS12 within 6 months. As a result, I remained with the government. Mr. Rose retired in July of 1999 and Melissa Stoehr blocked the promotion to a GS12 throughout the following year. She did this by refusing to submit the necessary paperwork to human resources at the end of the probationary period as directed by Mr. Rose. In June of 2000, I became aware that Ms. Stoehr was reassigning my supervisory duties to Charles Brinkley, a younger black male who was less qualified. This caused me to obtain another position with MSHA.

**5.** My next position with the DOL brought me under the supervision of O'Keitha Douglas. During the period July 2000 to March 2002 I was subjected, by her, to discrimination based upon age race and sexual harassment. I filed several union grievances concerning this conduct. These union grievances contain allegations of discrimination. The

remedies sought by the grievances included a retroactive promotion to a GS12 step 10 back to July 2000.

6. In March of 2002, I received a desk audit. The audit determined that my position should be at a GS12 level. This was an earned promotion and had nothing to do with my EEO cases or union grievances. I attempted to negotiated with management the date the promotion would become effective along with other remedies. I took the position that I had earned the promotion back to July of 1999. On or about March 3, 2003, Joseph Stormer informed me that the promotion back to 7/99 would not be extended because I had EEO cases and union grievances pending. The promotion has never been extended to the date I requested, nor have I been received compensatory damages.

7. Don Hinderliter can verify my allegation that Richard Rose promised me a promotion to a GS12 after my probationary period expired in July of 1999. Frankie Sanks, Keith Pendergast, and Rudy Watkins can verify my allegation that my supervisory duties were removed and given to Charles Brinkley. Keith Watson, Myra James and Carolyn James can verify my allegations that management blocked my promotion because I had EEO cases and union grievances pending.

Pursuant to 28 USC & 1746, I declare under the penalty of perjury that the foregoing declaration is true and correct.

_____    DATE: 01/02/06
Michel Ridgely

4

Ridgely Michel A. Jr.

From: HAYWOOD LYNNETTE M.
Sent: Friday, January 29, 1999 2:09 PM
To: RIDGELY MICHEL A. JR.
Subject: RE:

I have been on leave and am just reading this e-mail. I have not personally seen a statement rescinding your resignation. I checked with my staff and learned that they have received it and appropriate action has been taken.

---

From: RIDGELY MICHEL A. JR.
To: HAYWOOD LYNNETTE M.
Cc: ROSE RICHARD B.
Date: Friday, January 22, 1999 4:53PM
Priority: High

Lynnette,

This is just a follow-up to check if you have received my statement rescinding my request for resignation that was to take effect on January 30, 1999. I thank you in advance for your attention to this matter.

Thanks!
Michel

1

5

Ridgely Michel A. Jr.
___

From:            RIDGELY MICHEL A. JR.
Sent:           Monday, July 12, 1999 4:35 PM
To:              HINDERLITER DON L.

Importance:      High

Don,

I talked to Melissa about my job status. She seemed unaware about the 6 month probation period that Dick spoke to me about (ends July 30). In fact, her comment when asked about my upgrade was "we don't know what were going to do yet". She said she would talk it over with Adam, but my gut feeling per her reaction is that I'm going to linger on for a undetermined (long) period for something to happen, if at all. I would appreciate anything you can do.

Thanks!
Michel

1

6

Ridgely Michel A. Jr.

| | |
|---|---|
| From: | HINDERLITER DON L. |
| Sent: | Tuesday, July 27, 1999 2:04 PM |
| To: | RIDGELY MICHEL A. JR. |
| Subject: | RE: |

Mike, with the Div Chief job vacant I doubt that anyone will pursue it (other than yourself). Soooo, if you want to bring it up and discuss it with Pat, atleast she would be familiar with the topic and background. Your call, but otherwise you'll have to wait on a Div Chief (I think).

Don

From: RIDGELY MICHEL A. JR.
To: HINDERLITER DON L.
Date: Tuesday, July 27, 1999 12:38PM

Hi Don!

With all the changes taking place it seems like I'm getting lost in the confusion. My six months will be up at the end of the week. Rose told me the day he embarked that I was doing a very good job  Should I try approching Pat myself or use another channel? Appreciate your help.

Michel

Ridgely Michel A. Jr.

From: STOEHR MELISSA
Sent: Thursday, November 18, 1999 4:50 PM
To: RIDGELY MICHEL A. JR.
Subject: RE:

Hello Mike,

I don't believe that there is anything for us to discuss. I did not verbally agree to your receiving a GS-12 in January.

Melissa

From: RIDGELY MICHEL A. JR.
To: STOEHR MELISSA
Date: Thursday, November 18, 1999 1:15PM

Melissa,

When you have the time, I would like an opportunity to discuss the status of the GS-12 verbally agreed upon when I took over as supervisor of operations on January 31, 1999.

Thanks!
Michel

1

8

## Taylor Charles B.

| | |
|---|---|
| m: | Taylor Charles B. |
| nt: | Wednesday, July 25, 2001 8:41 AM |
| To: | Webber Stephen |
| Cc: | Lelchook Jerry OASAM |
| Subject: | Intended Investigation |

On July 24, we met to discuss the Michel Ridgely grievance. During our discussion you indicated that you intended to have your deputy conduct an investigation into the charges included in the statement which accompanied the grievance. I agree that the referenced incidents are serious charges against a supervisor, and against the principal management official of Assessments. This record documents my response to your stated intention.

I advised you that I was asked to interview unit employees by your deputy. There were no limitations or restriction on that request, although you acknowledged that both you and your deputy are aware of the fact that no restrictions could be placed on my inquiries once arrangements had been agreed upon to conduct interviews.

During the grievance meeting, you told me that your deputy would be conducting interviews with employees as an "investigation" of the charges referenced in the grievance. You assured me that there would be no discipline or reprisal engaged in as a result of what these employees told your deputy. I responded as follows:

1. The employees who spoke with me requested that their names not be referenced. You repeatedly asked me for names, and I repeatedly refused to provide them to you. I note that this grievance includes claims of reprisal, harassment and the creation of a hostile work environment on the part of management.

2. I advised you that interviewing these employees would approach interference with the exercise of protected rights. I also advised that you had other, less intrusive means to obtain information, including talking to the supervisor. I would ume that you have sufficient trust in the supervisor that you are confident that she will tell the truth. I suggest that if do not, you have much more significant issues to deal with.

3. Employees are entitled to speak in confidence with their representative, and not be fearful that what they tell the representative will be associated with them. An investigation of the type planned would immediately have a chilling effect on employees in this bargaining unit in the exercise of their protected rights.

4. I suggested to you that once you determine what the facts are from sources you should be able to trust, that you proceed accordingly. However, you indicated that you were going to request that your deputy conduct an "investigation". Please note that your deputy is directly associated with management in the organization in which there have been claims of harassment and reprisal. he is not likely to be an official who will convey confidence and fairness to employees.

I am once again asking that you reconsider your intended course of action. Interference with the grievance procedure by management is improper. I have advised you what these employees have said, and although the grievance submission was frank and graphic, it reflected exactly what was said, not by one or two employees, but by many employees. The very act of imposing management authority into the grievance prouder is interference, restraint and coercion, and would frustrate the very thing you indicate it is that you want, ie a search for truth.

1

9

Friday March 22, 2002

Dave,

During our conversation Wednesday, I mentioned that the catalyst that triggered the recent events in the Directorate of Assessments was a grievance filed in May 2001. This grievance was filed by me and supported by a number of my fellow co-workers. In early September 2001, the grievance was well on its way to being referred to the Department for arbitration. Just prior to referring the grievance to arbitration, management requested that officials from the Department be allowed to conduct an investigation on the merits of the grievance. Approval was given by me and my representatives to allow the investigation and to allow management an opportunity for a low key, yet satisfactory, conclusion for all involved.

As you are aware, steps were taken earlier this week to remedy the nucleus of the problem. However, the residual damage has not yet been addressed. This was the primary reason for my desire to meet with you. Many of us feel that there may be some lingering resentment from at least some of management within Assessments. We feel concerned that this resentment may fester and may eventually have negative results on our careers. I'm not sure how this can be remedied, but some sort of genuine apology would go a long way to ease the concerns and bring closure to this tragic episode.

Additionally, the original grievance, prior to arbitration, had outlined certain resolutions as remedies. Attached is a list of those resolutions. I have also included back-up material to support justification for these remedies.

Thank you for taking the time to review this material. I look forward to meeting with you again next week.

Mike Ridgely


Attachments:

Vacancy Announcement (MSHA-00-87)
AIB No. A00-44
e-mail (Re: Instant Cash Award)
Performance Review dated June 6, 2001

Equable Resolutions:

1. The immediate cessation of all treatment that could be considered retaliatory in nature toward the employee and other employees who participated in the grievance.

2. The "Letter of Warning" dated May 15, 2001 will be rescinded and a letter of apology will be issued to all affected employees.

3. The employee will be immediately promoted to GS-12 step 10, with retroactive pay at the GS-12 step 10 level back to July 30, 2000.

4. Reinstatement of the "Instant Cash Award" denied the employee in October 2000.

5. Reinstatement of the computer program used to create the item for which the "Instant Cash Award" was originally intended.

6. Absolutely no further actions in reprisal against the employee or other employees who provided information to the union or to management with regard to the grievance and subsequent investigation.

7. A guarantee that management will provide a professional work environment for all employees.

Exhibit # 1 (Page 1)

Ridgely Michel A. Jr.

From: Ridgely Michel A. Jr.
Sent: Friday, March 14, 2003 2:31 PM
To: Stormer Joe
Cc: Smith Blake PWBA; Mitchell Judy
Subject: RE: Recollection of Conversation of March 3, 2003
Importance: High

Tracking:   Recipient           Delivery                            Read
            Stormer Joe         Delivered: 3/14/2003 2:31 PM   Read: 3/17/2003 9:55 AM
            Smith Blake PWBA
            Mitchell Judy       Delivered: 3/14/2003 2:31 PM   Read: 3/14/2003 2:31 PM

[Jo]e,

[Re]spectfully, my recollection is somewhat different than yours. Please let me respond, and clarify what I actually said when [yo]u asked me what it would take to get this thing settled. I said, "I would like my career to be made whole." "I would like to be [wh]ere I would have been if I had been treated fairly and equably all along. That my career (as well as my mental and physical [he]alth) had suffered deeply throughout this entire ordeal, and steps needed to be done to make me whole.

[Re]spectfully,

[M]ichel Ridgely

>-----Original Message-----
>From: Stormer Joe
>Sent: Friday, March 14, 2003 12:36 PM
>To: Ridgely Michel A. Jr.
>Cc: Smith Blake PWBA; Mitchell Judy
>Subject: RE: Recollection of Conversation of March 3, 2003
>
>Mike,
>
>I absolutely did not say what you have me quoted as saying. We were discussing options to bring the matter to
>conclusion without going to arbitration, you told me your history, and I inquired that if we gave you what you asked
>would you close the matter. You informed me that you wanted a 12 step 10 for all that MSHA had done to you. You
>said that you wanted to go to arbitration so that everyone could hear all that you had been subject too during your
>course of employment. I stated that your grievance said you wanted the GS back to the time of the audit. You said
>that there was a phrase which would allow the arbitrator to give you anything you asked for-that Carolyn James had
>put that specifically in there to cover you.
>
>Joe
>
>>-----Original Message-----
>>From: Ridgely Michel A. Jr.
>>Sent: Friday, March 14, 2003 11:31 AM
>>To: Stormer Joe
>>Cc: Smith Blake PWBA
>>Subject: Recollection of Conversation of March 3, 2003
>>Importance: High
>>
>>Hi Joe,

This e-mail is to respectfully confirm our conversation of March 3, 2003, and to establish an understanding as to the dialog between you and me regarding our discussion about my promotion to a GS-12. During the course of our conversation, I sought an answer as to why the promotion did not appear on my earnings and leave statement for the pay period ending February 22, 2003. I further informed you that my supervisors had told me on January 31, 2003, that the promotion would be reflected in the pay period ending February 22. Your response to me was "we pulled the promotion back because you filed a grievance." If you do not agree with my recollection of the conversation, please let me know what your recollection is within the next three workdays.

Thank you,
**Michel Ridgely**

# Maryland Psychotherapy Services

15102 Nottingham Road  
Upper Marlboro, MD 20772

4313 Hamilton Street  
Hyattsville, MD 20781

(301) 888-1323 ■ Fax (301) 888-2172

To Whom It May Concern:

Michel Ridgely came in to see me on 1/19/2000. He is a man of strong and honest character who believes in doing things correctly and honestly.

Often he expressed his anxieties and depression in trying to cope with the deviousness of his supervisors. When he observed an illegal procedure done by a colleague and reported it he felt like he had done the right thing. The response of the supervisor was both punishing and threatening. Michel was shocked at this response. After this incident his interactions with his supervisors had deteriorated.

This intense negativity wore away at his psyche and his physical health in general. He realized that he was being skipped over for promotions and his submitted paperwork was lost. All this was wearing him out. His sleep pattern was disturbed, he suffered serious bouts of depression and he experienced severe suicidal ideation. He feared that he might follow through on one of his plans. His self-esteem plummeted. He felt useless at his work. On the physical level he was experiencing acute, incapacitating headaches and numerous GI problems. Mentally he was wrought with paranoia and distrust (which was realistic!)

He experienced intense anxiety around the issues of losing his job and therefore losing his home as well as all significant relationships. He became socially isolated and began losing valuable and supportive friendships. He felt bewildered and disillusioned at how he was being treated by his supervisors. He wondered how a dedicated, honest and hard worker like himself could be so mistreated. What was wrong with him? All his upbringing and spiritual values had led him to believe to act with integrity. When he performed with these values in mind he was severely humiliated and punished.

Throughout the past three years in working with Michel I have seen a strong man, with high ideals and values, slowly and steadily lose all what he has held in esteem for all of his life. Throughout these past years he has been struggling and fighting for what he knows is correct. Unfortunately, it has taken its toll in effecting him with depression, anxiety, suicidal ideation, sleeplessness, poor self-esteem, feeling of hopelessness and worthlessness, lack of concentration and fatigue.

Michel still clings to his idealism and sense of doing the right thing. I anticipate that if he receives justice and the perpetrators are disciplined he will be able to recoup some of these lost ideals and regain his mental strength over time. The physical maladies hopefully be rectified with medication and time.

Sincerely,

Carol A. Auletta, LCSW  
09·05·03

CAROL A. AULETTA, C.S.W.

14

**U.S. Department of Labor**  Office of the Assistant Secretary
for Administration and Management
Washington, D.C. 20210



2/24
FEB 2 3 2005   25 My 2005
S 31 30 o. 24 my 2005

Sent By Federal Express # 7909 0443 1203

Mr. Michel Ridgely
c/o Mr. David Colapinto
3233 P Street, N.W.
Washington, D.C. 20007

CRC Case No. 03-11-111

Dear Mr. Ridgely:

Based on the evidence of record, the Civil Rights Center (CRC) has determined that the aforementioned complaint of discrimination should be dismissed pursuant to the EEO Regulations at 29 C.F.R. 1614.107(a)(5).

The record on this complaint demonstrates that the action at issue – management's act of "pulling back" a performance-based promotion – was rectified when your promotion to the GS-12 level was made on April 25, 2003, retroactive to February 9, 2003, with requisite backpay. 29 C.F.R. 1614.107(a)(5) mandates the dismissal of complaints that are moot where there is no reasonable expectation that the alleged violation will recur, and interim relief or events have completely and irrevocably eradicated the effects of the alleged violation. The Equal Employment Opportunity Commission (EEOC) defines full relief as "payment to each identified victim of discrimination on a make whole basis for any loss of earnings the person may have suffered as a result of the discrimination." In this case, there is nothing to suggest that you will again be subject to a delay in the receipt of a promotion because of discriminatory reasons. Therefore, the first criterion in the mootness analysis is satisfied. Further, as you received the promotion in question with appropriate backpay, the second criterion is also met.

However, the EEOC has also held that where a complainant has made a timely request for compensatory damages, an agency must address the request before it can dismiss a complaint for mootness. In your formal complaint, you requested "fair and equitable restitution in regard to both the tangible and intangible harm that has resulted to [your] career, and [your] physical and mental health." Reviewing this request in the light most favorable to you, the CRC found that you arguably sought compensatory damages and proceeded to accept your complaint for investigation. In the July 9, 2003 letter accepting your complaint, the elements of proof necessary to demonstrate a claim for compensatory damages were outlined. You were specifically informed, in part, that if you were claiming pecuniary losses, you must establish that any such expenses were incurred *as a result of* the discriminatory conduct *at issue in this complaint*. By letter dated July 28, 2003, the assigned Investigator requested an affidavit from you. After reiterating the standards governing proof of compensatory damages, the Investigator asked you to describe the nature of the harm caused by the delay in receiving the promotion, including

1

/5

any pecuniary damages, and asked you to provide documentation "that establish[ed] the existence, nature and severity of any emotional distress as a direct result of the delay in receiving" the promotion.

In response, you discussed harm allegedly caused by the events giving rise to an earlier EEO complaint and union grievances. You added that MSHA management's "continuation of reprisal and the continuation to deny [you] advancement have played a significant role in causing [you] continued financial hardship." That hardship, you explained, "stems from the results of loss of time in grade, steps, and the loss of opportunities to apply for positions at higher levels that would have allowed [you] the normal course for advancement." You also stated that "the physical affects of continual reprisal has cost [you] in medical bills." You also submitted a statement from a therapist who had worked with you since January 2000. The therapist discussed physical and mental stress allegedly suffered by you as a result of the events that led to your prior EEO complaint and union grievances.

The record on this complaint shows that you received the promotion at issue with retroactive pay. Based on the aforementioned testimony, you have not submitted evidence to establish that you sustained compensatory damages as a result of the two-month delay in receiving the promotion, despite being asked to do so. The EEOC has held that if a complainant requests compensatory damages, "the agency must request that [complainant] provide some objective proof of the alleged damages incurred, as well as objective evidence linking those damages to the adverse actions at issue." Drumond v. Caldera, EEOC No. 01985844, 1999 WL 643259, at *2 (Aug. 4, 1999).

The CRC finds your testimony regarding compensatory damages to be wholly inadequate to show your entitlement to such damages. In your own statement, you claimed, in general terms, that you were injured both financially and emotionally by the discriminatory conduct that has been directed against you since January 1999. The lack of specificity of your contentions is enough to defeat your claim. See Burney v. Henderson, EEOC No. 01974835, 1999 WL 320586, at *3 (May 4, 1999). Moreover, you also failed to explain how any of your alleged injuries were specifically brought about by the two-month delay in the receipt of the promotion. For example, you claimed that MSHA's conduct deprived you of the opportunity to apply for higher-level positions. However, you did not point to any specific opportunities lost because of the delay at issue in this complaint. It appears instead that your complaints are leveled at conduct that occurred well before the promotion was delayed, and which is the subject of other proceedings. Your therapist's statement suffers from the same defects. First, the statement clearly speaks to physical and mental stress allegedly suffered as a result of the events that led to your prior EEO complaint and union grievances, rather than the delay in the receipt of the promotion. Second, the therapist's statement is utterly devoid of any concrete instances of pecuniary or non-pecuniary losses that you suffered because of the delay at issue. See Tacheene, 2002 WL 1461249, at *1.

Because you were given the opportunity to provide objective evidence of compensatory damages stemming from the two-month delay of promotion and failed to do so, your

2

/6

aforementioned complaint of discrimination is dismissed. If you are dissatisfied with this decision, you may file a notice of appeal with the EEOC at anytime up to thirty (30) calendar days after your receipt of this decision. The appeal should be submitted to the EEOC's Director, Office of Federal Operations, P.O. Box 19848, Washington, D.C. 20036. Any statement in support of the appeal must be submitted to the EEOC Director, Office of Federal Operations, and to this office, within thirty (30) calendar days of your filing of the notice of appeal. The regulations at 29 C.F.R. 1614.403 (a) encourage the use of EEOC Form 573 in presenting an appeal to the EEOC. A copy of this form is enclosed.

If you elect not to appeal to the EEOC, you may file a civil action in an appropriate U.S. District Court within ninety (90) days of your receipt of this decision. If you file an appeal with the EEOC, you may still file a civil action in the appropriate U.S. District Court within ninety (90) calendar days of your receipt of the EEOC's final decision on your appeal. A civil action may also be filed anytime after 180 days from the date of filing your appeal with the EEOC, if a final decision has not been issued by the EEOC's Office of Federal Operations. You are advised that if you file a civil action, you must name the head of the Agency as the defendant. Failure to name the head of the Department or Agency may result in the loss of any judicial redress to which you may be entitled. The head of the Department of Labor is Elaine L. Chao, Secretary of Labor.

Sincerely,

ANNABELLE T. LOCKHART
Director
Civil Rights Center

Enclosure

cc:   Mr. Michel Ridgely (sent by Federal Express No. 790412233672)(w/ encl.)
      16920 Mattawoman Lane
      Waldorf, MD 20601

      Michael Thompson/Darlene Warren, MSHA EEO Managers