*F-03-11 111*

**U.S. Department of Labor**
Office of the Assistant Secretary for Administration and Management
Civil Rights Center

**Formal**
complaint of discrimination

Note: Complete this form, sign it, and send it in accordance with instructions from your EEO Counselor to Director, Civil Rights Center. See back for additional information or for help in completing this form.

| 1a. Name | 2. Job title and grade |
|---|---|
| Michael A. Ridgely, Jr. | Compliance Specialist GS-13 |

| 3a. Home address | 3b. Office address | 4. Telephone, including area code, extension |
|---|---|---|
| 16920 Mainmainin Waldorf, MD 20601 | MSHA 1100 Wilson Blvd Room 2564 Arlington, VA 22209-3939 | home 301/392-6080 office 202/693-9794 |

**5. Bases of your complaint** (Check as appropriate and specify where a blank is provided)

☑ race ___ ☐ religion ___ ☑ sex ___
☐ color ___ ☑ age ___ ☐ sexual orientation* ___
☐ national origin ___ ☐ disability ___
☑ reprisal _CRC-03-07-152 and TM-03-11-110_

Please specify the prior EEO activity in which you were involved and the date.

*Protected by Executive Order 13087, not by federal statute. Claimants on this basis may request a final decision, but have no hearing or appeal rights.

**6. Specify the action(s) that gave rise to this complaint.** (Please use the back of this page if needed, and check here ☐ if continued on back.)

Date(s)          Specific action(s)

PLEASE SEE ATTACHED FOR ITEM #6

**7. Please specify remedy(ies) you believe will resolve your complaint.**

PLEASE SEE ATTACHED FOR ITEM # 7

| 8. Date notice of right to file was issued | 9. Counselor's name | 10. Counselor's telephone |
|---|---|---|
| MAY 19, 2003 | LINDA BLUMNER | 202/693-6513 |

11. Have you filed a complaint on this same matter with:
☐ Administrative grievance system?
☐ A union (specify ___)?
☐ Merit Systems Protection Board (MSPB)?
If yes, date(s) of other filing(s) ___

| 12a. Representative's name | 2b. Representative's address | 12c. Representative's telephone |
|---|---|---|
| BLAKE SMITH | US Department of Labor 200 Constitution Ave NW Local 12, Rm N-1501 Washington, DC 20210 | 202/693-8375 |

| Date | Signature |
|---|---|
| MAY 27, 2003 | Michael A Ridgely Jr |

JUN 3 2003

CRC use only    Date received by CRC staff ___    Date issue ___

A-1

**When can you file a formal complaint?** When your EEO Counselor notifies you that your informal complaint cannot be resolved and provides you notice of your right to file a formal complaint, you have *15 calendar days from receiving that notice* to complete, sign, and submit this form to the Director, Civil Rights Center (CRC) or to the Secretary of Labor. Please note that the Secretary's office will forward the complaint to CRC, which may delay processing of your complaint.

**What happens next?** Only allegations that have been presented for EEO counseling will be considered for investigation at the formal stage. *If you wish to amend your formal complaint* during processing with allegations "like or related to" issues you raised in your informal complaint, *you must request an amendment by letter to the* Director, Civil Rights Center.

---

**6. continued.** Use this space to continue #6 from the face of this form.

Date(s)        Specific action(s)

---

**Definitions**

race    Racial group. For example:

American Indian or      A person having origins in any of the original peoples of North, South, or Central America, and who
Alaska Native           maintains tribal affiliation or community attachment.

Asian                   A person having origins in any of the original peoples of the Far East, Southeast Asia, or the Indian
                        subcontinent, including, for example, Cambodia, China, India, Japan, Korea, Malaysia, Pakistan, the
                        Philippine Islands, Thailand, and Vietnam.

black or                A person having origins in any of the black racial groups of Africa.
African American

Native Hawaiian or      A person having origins in any of the original peoples of Hawaii, Guam, Samoa, or other Pacific Islands.
other Pacific Islander

white                   A person having origins in any of the original peoples of Europe, the Middle East, or North Africa.

color   One's skin color or complexion, for example, light-skinned or -complexion, dark-skinned or -complexion.

national    An individual's (or his or her ancestor's) place of origin; or having the physical, cultural, or linguistic characteristics of a national origin
origin      group. For example: Egyptian, Iroquois Nation, Hispanic. (Hispanic, Latino, or Spanish origin refers to persons of Cuban, Mexican,
            Puerto Rican, South or Central American, or other Spanish culture or origin, regardless of race.)

religion    One's religious practice or belief. Examples: Baptist, Buddhist, Catholic, Hindu, Jewish, Moslem.

age     40 and above

disability  A physical or mental impairment which substantially limits one of more of a person's major life activities.

A-2

**Number 6. Specify the action(s) that gave rise to this complaint.**

In light of the following, I am filing a formal complaint in regard to the act of reprisal that prompted Case No. IM-03-11-110, and in support to the merits and history of events that support CRC-00-01-152 and the Local 12 Grievances for which the acts of reprisal were made.

The informal claim (Case Number IM-03-11-110) was born out of the most recent act of reprisal by MSHA management that being the pulling back of a performance based promotion. This act was the most recent in a long line if acts of reprisal that stem from my originally filing an EEO complaint (CRC-00-11-152), and Local 12 Grievances. These grievances include, but are not limited to, acts of severe sexual harassment and physical abuse.

MSHA management's refusal to conduct mediation based on their position as stated in the attached letter dated May 19, 2003, is an attempt to confuse the issues and ignore the history and the events that are the bases of the above mention complaints.

It appears that MSHA is attempting to do what it has done all along, ignore and confuse the issues, and combine unrelated issues to obtain a remedy. This latest attempt to ignore and confuse the issues, and thus deny mediation, is on it face a continued act of reprisal.

Though I am grateful for the promotion I received in April 2003, this promotion was a result of my valued performance at that time and recognized by my now immediate supervisors. This promotion should not be viewed as a remedy or a reward for restitution to the merits of CRC-00-01-152, the Grievances, or informal complaint IM-03-11-110.

MSHA (letter May 19) claims *"I was promoted to the GS-12 level, effective April 25, 2003, and since both of the EEO cases pending (CRC 00-01-152 and IM 03-11-110) would have focused on the issue of my promotion to the GS-12, that the purpose of mediation has been achieved."*

MSHA's position clearly ignores and confuses the events that have occurred over a period of several years and the neglect to my career that these events have created.

The subject promotion was earned by me through valued performance. It should not be looked upon as a reward or restitution by the agency for its acts of reprisal or its failure to comply with the law.

The pulling back of the promotion that prompted my filing the informal complain (IM-03-11-110) is only the most recent act of reprisal in a long line of acts of reprisal by the agency.

One would hope that a third and impartial party would review the above mention complaints (CRC-00-01-152, the Grievances, and IM-03-11-110), and recognize the neglect and abuse that has occurred over several years. One would also hope that a third

1

A-3

and impartial party would attempt to effect remedies that would be based on the results that this neglect and abuse has created over this long period of time.

A simple cursory review of the vast majority of documentation supporting CRC-00-01-152, the Grievances, and IM-03-11-110 clearly outlines that an attempt to make whole in these cases would warrant more that what a mere one grade promotion several years after the fact could remedy.

At the very least, one would think that the remedies for restitution should include making my career whole.

If a third and impartial party would simply 'Do the Math', one would recognize that in order to make just restitution, one would have to factor into the equation the documented events, abuse, and the neglect stemming back to January 1999 and beyond.

This third and impartial party should then recognize that this neglect and abuse has resulted in a loss of time in grade, steps, and opportunities to apply for vacancies at higher levels within and outside the agency for a period of over seven years. Additionally, one would also have to recognize that these events would most certainly create not only tangible and financial hardships, but physical and mental hardships as well.

The merits of CRC-00-01-152, the Grievances, and IM-03-11-110 clearly show that I have been subjected to obvious acts of discrimination, neglect, abuse, and reprisal and that these acts have all but been ignored by MSHA management. This is especially true in regard to the issues concerning the sexual harassment that management was well aware of, yet chose not to address for a period of almost two years. Management's neglect to address this very serious issue forced me (and others) to work in this unfavorable environment for this long period of time as it took a toll on my physical and mental health and career. Once addressed, management took steps to remove the discredited supervisor, yet failed to repair the damage the supervisor inflected, and in fact continued to punish me with continued acts of reprisal.

The merits of these complaints further show that these acts were levied at the hands of a select few managers that took it upon themselves to circumvent the rules and regulations created to provide and protect fairness and equable treatment for every government employee in the federal workplace.

Based on the above, I am filing this Formal Complaint for the reasons of continued reprisal, and to seek address of the merits of CRC-00-01-152, the Grievances, and IM-03-11-110, and for the hope of a fair and equable remedy of the concerns contained in these matters.

2  A-4

**Number 7. Please specify remedy(ies) you believe will resolve your complaint.**

1. Review the merits of case numbers CRC-00-01-152, IM-03-11110, and the Grievances filed through Local 12 which are the bases for which the acts of reprisal were made, and to give fair and equable consideration to the merits in these cases.

2. Fulfill the original remedies sought as documented respectively in each of the above cases/grievances pending, and any and all other remedies deemed appropriate.

3. Make my career whole using a formula that encompasses the entire time period that the above cases address, stemming back to and beyond January 1999.

4. Make fair and equable restitution in regard to both the tangible and intangible harm that has resulted to my career, and my physical and mental health.

5. Ensure that no further acts of retaliation or reprisal will take place for the remainder of my government career, and that I be afforded the same considerations that are afforded to all federal employees by law.

A- 5

Informal Complaint of Discrimination

**U.S. Department of Labor**
Office of the Assistant Secretary for
Administration and Management
Directorate of Civil Rights

IM03-11-110

NOTE: Please read the statements on the reverse side before completing this form. Type or print all information clearly.

| Employee/Applicant's Name | 2. Job Title and Grade |
|---|---|
| MICHEL A. RIDGELY, JR. | CIVIL PENALTY COMPLIANCE SPECIALIST GS-11/07 |

| 3. Address (Include ZIP Code) | | 4. Telephone No. (Include area code) |
|---|---|---|
| a. Home 16920 MATTAWOMAN LANE WALDORF, MD 20601 | b. Office 1100 WILSON BOULEVARD ARLINGTON, VA 22209-3939 Rm 2504 | a. Home (301) 372-6080 b. Office (202) 693-9724 |

5. Bases. (Please review definitions on the reverse side)  (Check and specify which basis/bases you believe were discriminatory)

- [ ] Race (Specify) _____
- [ ] Color (Specify) _____
- [ ] National Origin (Specify) _____
- [ ] Religion (Specify) _____
- [ ] Age (Specify) _____
- [ ] Disability (Specify) _____
- [ ] Sex (Specify) _____
- [ ] Sexual harassment
- [x] Reprisal

6. Give the date(s) and explain the specific action(s) giving rise to this complaint. (Use additional paper if necessary)

PLEASE SEE ATTACHED TO ITEM #6

APR 14 2003

7. Corrective action(s) desired:

1. The immediate cessation of all acts of reprisal and retaliation toward the employee, and that the employee be treated fairly and equally in the work place.

2. Immediate promotion to the GS-12 as of January 31, 2003, separate and apart of any other cases pending.

3. Corrective action to ensure the employee's career will be made whole, separate and apart of any cases pending.

4. Compensatory damages of $45,000.00 for the continued tangible/intangible results suffered from this continued act of reprisal.

| 8. EEO Counselor's Name and Telephone Number | 9. Date you contacted the EEO Counselor |
|---|---|
| MSHA MS. DIANE DIZE 202/693-9585 | MARCH 31, 2003 |

| 10. | 11. | 12. My representative(s) is/are: |
|---|---|---|
| I [ ] do [x] do not care to remain anonymous. | I [x] have not [ ] have filed a grievance/complaint on the same issue with another office or union. The date filed and name of office or union are: | (Name, address, telephone number) MR BLAKE SMITH U.S. DEPARTMENT OF LABOR 200 CONSTITUTION AVENUE NW Rm N-1501 WASHINGTON, DC 20210 TEL. 202/693-8375 |

I request that all correspondence be sent directly to [x] me [x] my representative(s).

| 14. Date | 15. Signature |
|---|---|
| APRIL 8, 2003 | Michel A. Ridgely Jr. |

Form DCR-1
Rev. Oct. 1992

B-2-1

Continuation to item 6, Form DCR-1 (Michel Ridgely)

This complaint is made for discrimination based on reprisal as follows:

I originally filed an EEO complaint in the Fall of 2000 (CRC Case No.: 01-11-152). To date, this case has proceeded through the investigation stage and awaits a recommendation. In June 2001, I filed a grievance through AFGE Local 12 based on sexual harassment and other inappropriate behaviors displayed by my (then) supervisor. In September 2002, I filed a subsequent grievance based on continuing practice and failure to promote. These matters are awaiting arbitration in July of 2003.

On January 31, 2003, I was informed by my superiors that I would be promoted in my career ladder position from a GS-11 to a GS-12. I was told that this promotion was based on my performance. My superiors informed me that the promotion would be reflected in my pay the following month (February). When I received and reviewed my earnings an leave statement on March 3, 2003, I realized that the promotion had not yet been applied.

On March 3, 2003, at approximately 4:30 p.m., I contacted (telephone call) Mr. Joe Stormer, Chief, Human Resources Division to ascertain the reason for failing to process the promotion as promised. Mr. Stormer informed me that the promotion had been "pulled back because I had filed an EEO complaint and a grievance." He told me not to worry, and was insistent that me and my supervisor come down to speak with him. He asked me who my supervisor was and asked me to come down with the supervisor to his office. I informed him that my supervisor (Ms. Myra James) had left for the day. Mr. Stormer then said "then you come down and we'll talk".

I immediate went down to Mr. Stormer's office. Once inside his office and behind a closed door, Mr. Stormer asked me what it would take to get me to settle my cases so he could give me the promotion. My response to him was:

*"Based on the discrimination and harassment I have been forced to endure that my life and my career had been severely damaged. That management had admitted guilt, at least in the grievance matter, since management had taken steps to remove the discredited supervisor. However, management had done nothing to repair the residual damage to my career. I told him that I wanted my career to be made whole. That I wanted to be were I would have been if I had been treated fairly all along."*

Mr. Stormer felt that my demands were unreasonable and told me to go home and sleep on my decision and to get back with him in the morning so we could "get this thing behind us".

The following morning (March 4), I spoke with Mr. Stormer and told him that denying my promotion in the face of an EEO complaint and a grievance well on its way to arbitration was unlawful. I told him that any further discussion on the matter should be made through my union representative, Mr. Blake Smith. I gave him Mr. Smith's

B-2-2

telephone number. With that, the conversation ended. Additionally, to the best of my knowledge, later that day, Mr. Stormer also informed Ms. Carolyn James, the (then) Union AVP for MSHA his reasons for pulling back the promotion, basing it on the fact that I had cases pending. As of the date of this complaint, the promotion to the GS-12 has not been made effective.

After waiting a reasonable amount of time to see if the promotion would be put in place, I contacted Ms. Diane Dize, EEO Specialist, on March 31, 2003. During my meeting with Ms. Dize, I informed her of the circumstances surrounding my failure to receive the promotion to the GS-12 level.

On April 4, 2003, Ms. Dize interviewed my superiors and was told by them that in fact they had put the paperwork in for my promotion based on my performance, but MSHA's Human Resource Division had returned the paperwork back because I had an EEO complaint and a grievance pending.

Attachment: 1

**U.S. Department of Labor**    Office of the Assistant Secretary
for Administration and Management
Washington, D.C. 20210

JUL 9 2003



Sent by Internal Mail

Mr. Michel Ridgely
C/o Mr. Blake Smith
U.S. Department of Labor
Local 12, Room N1501
200 Constitution Avenue, N.W.
Washington, D.C. 20210

CRC Complaint No. 03-11-111

Dear Mr. Ridgely:

After review of your formal EEO complaint received on May 29, 2003, and the enclosed EEO
Counselor's Summary Report dated May 13, 2003, the Civil Rights Center (CRC) hereby accepts
the following claim for investigation:

> Whether the Mine Safety and Health Administration (MSHA) discriminated against you
> on the bases of race (unspecified), age (unspecified), sex (male) and/or in reprisal (for
> previous participation in the EEO process) when management allegedly "pull[ed] back" a
> performance-based promotion due to a pending EEO complaint and a grievance.

If you disagree with this description of the claims accepted for investigation, please inform this
office within ten (10) calendar days of your receipt of this letter.

Please be advised that the record on your complaint demonstrates that the promotion at issue was
effectuated on April 25, 2003, retroactive to February 9, 2003. EEO Regulations at 29 C.F.R.
1614.107(a)(5) permit the dismissal of complaints that are moot where there is no reasonable
expectation that the alleged violation will recur, and interim relief or events have completely and
irrevocably eradicated the effects of the alleged violation. The Equal Employment Opportunity
Commission (EEOC) defines full relief as "payment to each identified victim of discrimination
on a make whole basis for any loss of earnings the person may have suffered as a result of the
discrimination." If the CRC were to conduct an investigation into your complaint and if, and only
if, discrimination were found to be the motivating factor for the actions at issue, you still may not
be entitled to additional payment beyond what you have already received retroactively.

However, the EEOC has also held that where a complainant has made a timely request for
compensatory damages, an agency must address the issue of compensatory damages before it can
dismiss a complaint for mootness. Compensatory damages include damages for past pecuniary
loss (out-of-pocket losses), future pecuniary loss (projected future out-of-pocket loss), and
nonpecuniary harm (emotional distress). If you are claiming pecuniary losses, you must establish
that any such expenses were incurred as a result of the discriminatory conduct. If you are
claiming nonpecuniary harm, you must establish the existence, nature and severity of any
emotional distress. To do this, you must present medical evidence and/or the testimony of others
who can corroborate your claim. In calculating nonpecuniary damages, the agency will focus on
the severity of the harm and the length of time that the complainant suffered from the harm. C-1-1

You are advised that the EEO regulations provide that the agency must complete its investigation within one hundred and eighty (180) calendar days of the filing date of your complaint. When a complaint has been amended, the agency shall complete its investigation within the earlier of 180 days after the last amendment to the complaint or 360 days after the filing of the original complaint. However, you have the right to request a hearing before an Equal Employment Opportunity Commission (EEOC) Administrative Judge (AJ) at any time after 180 days from the date you filed your formal complaint. Your request should be directed to the EEOC District Office provided on the letter acknowledging receipt of your formal complaint. After your request is received by EEOC, an AJ will be responsible for issuing a decision. The AJ has authority to review the administrative record and the representations of the parties to determine if or how the record needs to be developed further, which may include the scheduling of a hearing. Optionally, EEO complainants may elect to request mediation and preparation of a Final Agency Decision by the CRC at the conclusion of the investigation through the Department of Labor=s alternative dispute resolution (ADR) process.

In addition, you are advised that it is your responsibility to cooperate with the EEO Investigator in the presentation of your affidavit. Without your statement, made under oath or affirmation, concerning the alleged discriminatory agency actions about which you filed your complaint, it is difficult to proceed with the investigation. You have the responsibility to provide your completed affidavit within the timeframe specified by the EEO Investigator. This serves as notice being given pursuant to the EEO regulations at 29 C.F.R. 1614.107 (a)(7), that if you fail to provide requested information in the time specified by the EEO Investigator, your EEO complaint may be dismissed for failure to cooperate.

Please be advised that the complainant is responsible for raising the inference of discrimination when the investigator contacts him/her to present a sworn statement. In order to raise an inference of discrimination, the complainant must establish a prima facie case. With regards to your allegation based on race, age, and sex you must demonstrate: (1) that you are a member of a protected group (state your race, age and sex under oath or affirmation); (2) that the agency took the action at issue; and (3) that other similarly situated person(s), not of your protected group(s), were not subjected to the action at issue.

In order to demonstrate a prima facie case of reprisal, you must demonstrate: (1) that you participated in the EEO process or opposed practices made unlawful by the statutes covered under 29 C.F.R. 1614.103(a); (2) that the management official(s) involved in the action at issue were aware of your protected activity; and (3) that the agency took the action at issue at such time or in such manner as to suggest a causal connection between your protected activity and your present complaint. If you fail to suggest a causal connection between your protected activity and the action at issue in your present complaint, you will have failed to raise the inference of reprisal.

Additionally, you must demonstrate that there was a connection between membership in a protected group and the actions at issue. If you establish a prima facie case through circumstantial evidence, then the burden of production shifts to the agency to articulate some legitimate, nondiscriminatory reason for its challenged action. If the agency is able to do this, it will prevail unless you are able to prove, by a preponderance of the evidence, that the legitimate reason articulated by the agency was not its true reason, but was a pretext for discrimination.

C-1-2

An investigator has been assigned to conduct the investigation into this complaint. You should be contacted in the near future to begin the investigation. Should you have any questions on your complaint, please contact Naomi Barry-Pérez of my staff at (202) 693-6511.

Sincerely,

ANNABELLE T. LOCKHART
Director
Civil Rights Center

Enclosure

cc:    Mr. Michael Ridgely (sent by Federal Express No. 8408 3215 0824) (w/ encl.)
       16920 Mattawoman Lane
       Waldorf, MD  20601

       Michael Thompson (w/ encl.)

C -/-3

**U.S. Department of Labor**

Pamela A. Wood
Civil Rights Officer
1999 Broadway
Denver, Colorado 80202
(303) 844-1709
E-Mail: Wood.Pamela.a@dol.gov



**SENT VIA FEDERAL EXPRESS**

July 28, 2003

Mr. Michel Ridgely
C/o Mr. Blake Smith
U.S. Department of Labor
Local 12, Room N1501
200 Constitution Avenue, N.W.
Washington, D.C.  20210

SUBJECT:      Discrimination Complaint Investigation: CRC Case No. 03-11-111

Dear Mr. Ridgely:

I have been assigned to conduct an investigation on your above captioned complaint.  I am authorized to require all agency personnel to cooperate and to provide testimony, unless such testimony would result in self-incrimination.  Enclosed is my letter of authorization.

The purpose of this investigation is to obtain facts concerning this discrimination complaint so that a factual investigative report can be submitted to the Agency.  It is not the purpose of this investigation to determine the culpability of any individual who may be named by you, the complainant.  I will not make any finding on whether any individual is or is not guilty of discrimination, or whether you have been discriminated against in this case.

You are entitled to representation by a person of your choice, at your own expense, so long as your choice does not result in a conflict of interest.  The testimony that you will provide will be under oath or affirmation taken by affidavit.  This testimony constitutes the only official record of this fact-finding and no other record is authorized or may be made.  Your testimony will be made part of the investigative file, which I will submit to the Civil Rights Center, Washington, D.C. Once the investigative file is reviewed, it will be provided to you for your review and your additional comments (rebuttal) concerning the agency's articulated reason(s) for the action at issue in your complaint.  It may be used for official purposes only.  There is no pledge of confidentiality and your affidavit may be shown to other parties for the purpose of this discrimination complaint's adjudication.

Your testimony and exhibits (if offered by you) must pertain to the issue(s) raised by you in this complaint.  I may exclude irrelevant testimony or exhibits.  You may also propose any additional witnesses to be included and interviewed in this investigation.  If there are any witnesses you wish

*F-1A-1*

Page 2.

to propose, please include a written statement as to how you believe these proposed witnesses may provide information relevant to this case, as well as their position with the agency and how I may reach them.

The first step required to prepare your affidavit is to complete Page 1 of the affidavit (enclosed) in its entirety.

The first paragraph of your affidavit should include the following information in narrative form:

1. Your name.
2. Your Agency, Office, Division and/or Branch.
3. Your office address and telephone number.
4. Your job title and grade.

In your second paragraph, you should establish your *prima facie* case of discrimination based on race (unspecified), age (unspecified), sex (male) and reprisal for previous participation in the EEO process) by stating in your affidavit:

5. Your race.
6. Your date of birth, and age at the time of the event.
7. Your sex
8. The protected EEO activity(ies) in which you participated, including date(s).

When preparing your affidavit, be as specific as possible, providing dates, places and names (including the person(s)' position with the agency and how they may be contacted).

The body of your affidavit should be prepared by numbered paragraphs corresponding to the following questions: *(Please include the questions in the body of your affidavit followed by your responses.)*

The issue accepted for investigation is whether you were discriminated against because of your race (unspecified), age (unspecified), sex (male), and/or in reprisal (for your previous EEO activities), when management allegedly "pull[ed] back" a performance-based promotion due to a pending EEO complaint and a grievance.

9. Describe in detail the adverse action(s) taken against you because of your race, age, sex, and previous EEO activities. Include the name and contact information of the person(s) who took the action.
10. Please explain why you perceive the action was taken because of your race, age, sex and previous participation in an EEO activity.
11. How and when did management become aware of your participation in an EEO activity?
12. What documentation or evidence do you have to support your claim that the action was

F- 1A-2

Page 3.

taken because of your race, age, sex and previous participation in an EEO activity.

As stated in the letter from Annabelle Lockhart dated July 9, 2003, the record on your complaint demonstrates that the promotion at issue was effectuated on April 25, 2003, retroactive to February 9, 2003.  Also as explained in the letter, a request for compensatory damages, including past pecuniary loss (out-of-pocket losses) and future pecuniary loss (projected future out-of-pocket loss), requires that you establish that any such expenses were incurred as a result of discriminatory conduct.  A request for compensatory damages for nonpecuniary harm (emotional distress) must establish the existence, nature and severity of any emotional distress.

13. State whether or not you are currently receiving GS-12 wages.
14. State whether or not you received retroactive payment for the difference between the GS-11 and GS-12 salary.
15. Describe how you were harmed by the retroactivity of the promotion.
16. Describe the out-of-pocket losses that directly resulted from the delay in receiving the retroactive performance-based promotion.
17. Describe the out-of-pocket losses that you expect to incur in the future as a direct result of the delay in receiving the retroactive performance-based promotion.
18. Provide information / documentation that establishes the existence, nature and severity of any emotional distress as a direct result of the delay in receiving the retroactive performance-based promotion.

In addition to your affidavit, you may provide documentary evidence as appropriate.

I have enclosed the blank affidavit, Page 1, and the signature page for your use to prepare your statement.  You may type your responses directly on the forms (copying the blank affidavit as needed), or follow the forms format.  **You must number and initial the bottom right hand side of _each_ page of your affidavit.**  Please send your original signed affidavit with any documents you would like to submit as exhibits to me within fifteen (15) workdays of your receipt of this letter.  If I do not receive your response after fifteen (15) workdays of your receipt of this letter, I will assume you do not want to prosecute your complaint and will forward the case file to the Civil Rights Center without your statement.

F-1A-3

Page 4.

Pursuant to 29 CFR 1614.107(g), if you fail to provide this requested information within the time frame I have requested, your EEO complaint may be dismissed for failure to prosecute. If you have any questions regarding these documents, you may call me at 303-844-1709, or correspond via e-mail: wood.pamela.a@dol.gov.

Sincerely,

PAMELA A. WOOD
Civil Rights Officer

Enclosures

Cc: Michel Ridgely

F-1A-4

Affidavit of: _____ Michel Ridgely _____

Ms. Diane Dize, an employee with MSHA's Office of Equal Opportunity was also in contact with a number on management officials who expressed comments related to this matter. Ms. Dize can be reached on 202/693-9886.

It is suggested that someone contact these two ladies since they both have knowledge of the reprisal and the histories of both the EEO complaint and Union grievances.

Mr. Joe Stormer can be contacted on 202/693-9857

**Question Number 10. Please explain why you perceive the action was taken because of you race, age, sex and previous participation in an EEO activity.**

It should be noted, that I did in fact checked off on the categories of race, sex, and age in addition to reprisal on my complaint form. However, I checked race, sex, and age for lack of understanding of the procedures. I do not believe that Mr. Stormer retaliated against me because of race, sex, or age. I do believe that Mr. Stormer's actions were an act of reprisal, and that this reprisal was because I had cases pending. I believe this because this was the reason Mr. Stormer gave me during the telephone conversation he and I had on March 3, 2003. Therefore, my rational for checking race, sex, and age on the complaint form was to show a consistency with the issues reflected in those previous cases I have pending, showing that Mr. Stormer's actions was a continuation of the actions preceding it..

As stated in question number 9, this most recent act of reprisal was a continuation of a long line of acts of reprisals stemming from my filing an EEO complaint in July 2000, and a Local 12 Grievance in May 2001. The merits of the EEO complaint (CRC 00-11-152) and the Grievance clearly show that I was discriminated against and that the issues of race, age, and sex were major factors comprising the cases. These cases should be reviewed to determine those merits.

Further, Mr. Stormer was aware of the seriousness of the cases pending, He knew fully that the grievance contained allegations and evidence of sexual harassment and abuse. He knew Ms. Douglas had been transferred as a discipline for her actions. He knew that management had complete knowledge these action were taking place and allowed them to continue for almost two years. He knew, to allow this sort of activity to flourish for a period of almost two years was deplorable. He knew that not only did management fail to stop this activity, they knowingly encouraged it by promoting the individual (Douglas) responsible for carrying out the inappropriate acts.

Page: _5_ of Page _9_
Initials: _MR_

F-1-7

Affidavit of: _____ Michel Ridgely _____

Mr. Stormer and MSHA Management's attempt to force me into settling these very serious matters by holding an earned promotion over my head was on its face reprisal and a serious violation of law. This reprisal was a continuation of a long list of reprisals aimed at forcing me to break under pressure and withdrawal my complaints. This most recent attempt of reprisal by MSHA Management and the merits surrounding its purpose encompasses all of the merits of the cases that preceded it. To successfully, and satisfactorily resolve the concerns of this case, and those cases preceding it, one must attempt to encompass all that has occurred and provide provisions that will attempt to make things whole. To look upon an earned promotion, that is far removed from the merits associated with the cases pending, as appropriate restitution for the serious offenses that have occurred is wrong. One must take into account and recognizing the neglect and abuse that has occurred, which resulted in a loss of time in grade, steps, and the lost opportunities to apply for vacancies at higher levels within and outside the agency. One must recognize that this abuse and neglect has occurred for a period stemming from January 1999 and beyond. If proper restitution is to be made, all of the factors contained in both the EEO claim and Local 12 grievance must be considered.

**Question Number 11. How and when did management become aware of your participation in an EEO activity?**

Management became aware of my participation in an EEO activity when I informed my (then) immediate supervisor O'keitha Douglas that I needed time to speak with my EEO councilor. This occurred just after I filed my informal complaint on July 27, 2000. Ms. Douglas was insistent that I tell her everything that was going on. This was a condition established by Ms. Douglas for allowing me time to see an EEO councilor.

Page: 6 of Page 9
Initials: MR

F-1-8

Affidavit of:     Michel Ridgely

**Question Number 12.  What documentation or evidence do you have to support your claim that the action was taken because of your race, age, sex, and previous participation in an EEO activity?**

Please see my responses to questions number 9 and 10 of this affidavit.

**Question Number 13.  State whether or not you are currently receiving GS-12 wages.**

I am currently receiving GS-12 wages.  However, the GS-12 was earned by valued performance not a result of any remedy or a reward for restitution to the merits surrounding the EEO complaints and/or grievances.

**Question Number 14.  State whether or not you received retroactive payment for the difference between the GS-11 and GS-12 salary.**

I did receive retroactive payment for the difference between the GS-11 and GS-12. However, these payments were slow in coming and piecemeal.

Affidavit of: _____Michel Ridgely_____

**Question Number 15.  Describe how you were harmed by the retroactivity of the promotion.**

As the record reflects, I failed to receive a promised promotion back in January 1999.  At that time, I turned down a promising position outside of government to accept a supervisory position and promised promotion within my (then) program area.  This promised promotion failed to become a reality and this failed reality is (in part) the basis of my original EEO complaint (CRC 00-11-152).  I was later subjected to the treatment of my (then) immediate supervisor Ms. O'Keitha Douglas, and the sexual harassment and other adverse actions she and her bosses inflicted, this too had a profoundly negative affect on my image and career.

Mr. Stormer and MSHA Managements' continuation of reprisal and the continuation to deny me advancement have played a significant role in causing me continued financial hardship.  This hardship stems form the results of loss of time in grade, steps, and the loss of opportunities to apply for positions at higher levels that would have allowed me the normal course for advancement.  The result of the continued reprisal and the financial hardship it has fostered has also taken a negative affect on my physical and mental health.

Additionally, losing face in the eyes of the Agency's leaders (the Assistant Secretary and his immediate staff) has been a difficult thing to accept.  The constant untruths about my character and work habits have decreased my image as a federal employee and human being in the eyes of those I hold in high regard.

**Question Number 16.  Describe the out-of-pocket losses that directly resulted from the delay in receiving the retroactive performance-based promotion.**

As stated in the answers to question 15, I have suffered from the obvious affects of seeing little to no career growth.  The continual act of depriving me earned advancement has cost me dearly, in time in grade, steps, and lost opportunities in applying for higher-level positions.  Additionally, the physical and mental affects of continual reprisal has cost me in medical bills.  This mental distress is compounded with the knowledge that those responsible for actions of wrongdoing that are the basis of my complaints, and the stalling of my career, have seen substantial growth in their own careers, with little to no disciplinary actions.

Page: __8__ of Page __9__
Initials: __MR__

F- 1-10

Affidavit of: _____ Michel Ridgely _____

**Question Number 17.  Describe the out-of-pocket losses that you expect to incur in the future as a direct result of the delay in receiving the retroactive performance-based promotion.**

Because of the results of the actions of management including those of Mr. Stormer in the most recent act of reprisal, I will never completely recover financially.  The loss of time in grade, steps, earned promotions under a normal work environment, and the loss of opportunities to apply for higher-level positions will affect me for the remainder of my career and into retirement.

If I had been treated fairly, and not been subjected to the outrageous behaviors I was forced to tolerate at the hands of management, I most likely would have progressed up the ladder in my government career.  One cannot place an amount on how much I have lost, or how much more I will lose, because of the actions taken (working conditions and acts of reprisal) to deny me advancement over the course of events that comprise the merits of my complaints.

**Question Number 18.  Provide information/documentation that establishes the existence, nature and severity of any emotional distress as a direct result of the delay in receiving the retroactive performance-based promotion.**

Please see the attached [**EXHIBIT #2**] report from Ms. Carol A. Auletta, Therapist.

Witness Questionnaire
**Myra James**
[Re: Michel Ridgely, Case No. 03-11-111]

Please respond to the following request for information relative to this formal complaint of discrimination.  Provide your response to the following questions on the affidavit forms found in the enclosure to the cover letter.  Number and initial **each page** and initial any corrections made to any items in your affidavit.

Prepare your response in narrative form to best relate what occurred in this complaint.  As you describe circumstances and facts in a time sensitive chronology, give specific and detailed information so that someone who is not familiar with your situation can understand what it is you are trying to explain/demonstrate.  In other words, your affidavit should paint a picture for the person who will make the decision relative to the issue raised in this complaint.

The accepted issue that you will be responding to is:

> Whether the Mine Safety and Health Administration (MSHA) discriminated against Michel Ridgely on the basis of race (unspecified), age (unspecified), sex (male) and/or in reprisal (for previous participation in the EEO process) when management allegedly "pull[ed] back" a performance-based promotion due to a pending EEO complaint and a grievance.

Please provide your response to the following:

1.     State your current employer (Agency, Division/Branch), the office address, telephone number, and your position title and grade.

       **Answer:  Mine Safety and Health Administration/Office of Assessments/Civil Penalty Compliance Office – 1100 Wilson Boulevard – Suite #2503 – (202) 693-9727, Chief, Civil Penalty Compliance Office, GS-13**

2.     Please state for the record your race, age and date of birth, sex, and whether or not you have previously participated in an EEO process.

       **Answer:  African American, 44, February 6, 1959, Female, No.**

3.     Did you have any discussion(s) with Mr. Ridgely regarding his potential eligibility for promotion in February 2003?  If yes, please provide the dates (if known), and a summary of the information discussed in meetings or conversations with Mr. Ridgely, in addition to any documents/materials you provided Mr. Ridgely regarding his potential eligibility for a promotion in February 2003.

       **Answer:  Yes, in February 2003 I informed Mr. Ridgely that he had demonstrated that he can could perform the duties of a GS-12, Civil Penalty Compliance Specialist.  Mr. Ridgley was informed the effective date of his promotion would be the following pay-period (date unknown)**

*F-5-1*

4.    Did you have a conversation with Mr. Ridgely regarding the processing or a potential delay in the processing of his promotion to GS-12? If yes:

       **Answer: No**

    a.    Please describe in detail any conversation between you and Mr. Ridgely. Were you aware that Mr. Ridgely had previously participated in the EEO process and/or grievance process? If yes, please describe how you became aware of his participation in either or both processes.

    **Answer: I was aware that Mr. Ridgely was involved in the grievance process because I was his Local 12 union representative prior to moving into a management position.**

    b.    If you were aware of Mr. Ridgely's participation in the EEO process and/or the grievance process, did that knowledge have any affect on the discussion you had with Mr. Ridgely? If yes, please describe.

    c.    Were you aware of Mr. Ridgely's race, age and sex at the time of your discussion with him? If yes, did his race, age and/or sex have any bearing on the discussion? If yes, please describe.

5.    Did you have a discussion with any member of management regarding the withholding / delay of Mr. Ridgely's promotion to GS-12? If yes:

    **Answer: No, to my understanding the decision to withhold Mr. Ridgely's promotion was done by someone in the Human Resources Division. I received that information from Mr. Ridgely**

    a.    Please provide a detailed summary of any discussions or transactions (including dates) with management and/or Human Resources regarding the withholding of Mr. Ridgely's promotion.

    b.    Was Mr. Ridgely's race, age, sex, or participation in the EEO process and/or the grievance process discussed with management and/or Human Resources? If yes, describe the discussion(s) (including dates), and whether or not it was discussed in relation to the withholding of Mr. Ridgely's promotion to GS-12.

    c.    Did you have any discussions / transactions with management and/or Human Resources regarding the possibility of subsequently promoting Mr. Ridgely to GS-12? If yes, please describe.

6.    Please provide a detailed summary (including dates) of actions / changes related to the WEBPAR system regarding Mr. Ridgely's promotion to GS-12.

    **Answer: I do not have access to this information**

7.    Please provide any other information you believe is directly related to Mr. Ridgely's accepted allegation.

F-5-2

**Answer:  I do not have any information to provide**

8.      Provide the name and contact information of anyone whom you believe will be able to contribute information directly related to Mr. Ridgely's situation, and describe the information they will be able to present.

**Answer:  I do not have a name to provide**

F - 5 - 3

**WITNESS AFFIDAVIT**

I, (name) Myra Vanessa James

am an X employee of / ___ applicant to / ___ former employee of
the U.S. Department of Labor's:

(Agency) Mine Safety and Health Administration

(Office) Office of Assessments

(Division) Civil Penalty Compliance Office

(Branch) _____

Located in (city and state) Arlington, VA

In the capacity of (show both your organization title and the classification of your job if different):

_____

Grade GS-13 between (date) 10/2002 and (date) Present

My telephone number during working hours is (202) 693-9727

I HAVE BEEN ADVISED OF THE FOLLOWING:

I am required by Federal regulations and Department of Labor policy to cooperate fully with the investigator who has been assigned to conduct an impartial and appropriate investigation into a complaint of discrimination against the Department of Labor. I must provide a statement for the investigative record that is true and complete to the best of my knowledge and belief and fully discloses all of my firsthand knowledge having a bearing on the merits of the complaint. My statement is made under oath (or affirmation), without a pledge of confidentiality, in accordance with the rules, regulations, policies, and procedures of the Equal Employment Opportunity Commission and the Department of Labor. This means that any employee(s) whom I accuse of discrimination or other acts of impropriety may be shown this statement or relevant portions and be given an opportunity to respond. In addition, the Complainant and the appropriate Department of Labor officials involved in the EEO complaint process will receive the entire investigative report. I have the right to review my statement prior to signing it and may make initialed corrections if it is incomplete or inaccurate. I have the right to receive a copy of the signed statement.

I am entitled to representation by a person of my choice during my participation in the EEO process (so long as my choice does not result in a conflict of interest). I have ____ / have not X chosen a personal representative at this time.

F-5-4

EEO regulations specifically protect participants in the EEO complaint process from any acts of reprisal, discrimination, coercion, harassment, restraint, or interference as a result of their participation in the EEO complaint process.

Having been advised of the above information about my role as a witness in the investigative process, I solemnly __X__ swear or ____ affirm that the statement to follow is true and complete to the best of my knowledge and belief, and fully addresses the issues and concerns raised by the investigator.

Initials: __muɔ_____

Affidavit of: **Myra James**
[Re: Michel Ridgely, Case No. 03-11-111]

F-5-5

Page: _6_ of Page _7_

Initials: _mw J_

F-5-6

I have reviewed this statement, which consists of ___7___ pages, and hereby solemnly ___X___ swear _____ affirm that it is true and complete to the best of my knowledge and belief. I understand that the information I have given will not be held confidential, will become a permanent part of the record of investigation, and may be shown to any necessary party.

_____     2/5/04
(Signature of Affiant)                                                                              (Date)


Signed before/received by me at (Street and City)

_1999 Broadway_____

on this _11th_ day of _February_____, 20_04_.

_Pamela A Wood_____
                    (Signature of Investigator/Witness)

CRC Form 10
(Rev. 3/03)

F-5-7

May 14, 2004


Ms. Naomi Barry-Perez
U.S. Department of Labor
Office of the Assistant Secretary for
Administration and Management
Room N-4123
200 Constitution Avenue, N.W.
Washington, D.C. 20210


Re: Michel A. Ridgely, Jr.
     CRC Case No. 03-11-111


Dear Ms. Barry-Perez,

Attached please find my rebuttal comments to the Investigative Report sent to me under
Mr. Alexander's letter of April 13, 2004.  As agreed, I was given an extension to provide
comments up to COB Monday, May 17, 2004.  If you have any questions, please feel free
to contact me on 202/693-9724.


Sincerely,

Michel Ridgely

F-1001 Pg.1

**Investigative Report, Item III, Summary of Investigation:**

*The Complainant stated he did not understand the procedure for identifying the bases of his complaint and checked race, age, and sex by mistake……..*

Rebuttal:

It was my understanding that an act of reprisal based on previously filed complaints encompasses the merits of those previously filed complaints.  Based on this understanding, I would like to make clear, I checked off on Sex, Age, and Race in addition to Reprisal because I believed the (latest) act of reprisal (the pulling back of the performance based promotion) was just that, the most recent act of reprisal in a long succession of acts of reprisal that included discrimination based on Sex, Age, and Race that stem from my Whisleblowing activity in 1998, and which are the bases for my original EEO complaint and Local 12 grievance.  Because this last act of reprisal was motivated by the pending status of these previously filed cases (both the original EEO complaint filed in 2000, and the Local 12 Grievance filed in June 2001) as Mr. Stormer stated in our telephone conversation, and subsequent meeting of March 3, 2003, and since these cases address numerous acts of reprisal which included elements of discrimination related to Sex, Age, and Race I felt checking these categories in addition to Reprisal was appropriate.  Therefore, my rational to check off Sex, Age, and Race in addition to Reprisal was to show a consistent pattern with the merits that are the bases for the original EEO case and Local 12 Grievance since this last act of reprisal was the result of the pending status of these cases.

**Mr. Stormer's comments:**

1. (#2, F-2-2), Stormer states, *"Mike Ridgely asked for an appointment with me. We got together one afternoon."*

Rebuttal:

My (telephone) conversation with Mr. Stormer on March 3, 2003, was initiated by me.  However, the subsequent meeting with Mr. Stormer was initiated by him. When I called Mr. Stormer to inquire about my performance based promotion, and why it had not "yet" appeared on my pay stub, he informed me over the telephone that *"we pulled your promotion back because you have grievances pending."*  At this juncture, he said don't worry, and asked me if I and my supervisor (Myra James) could come down to his office to speak with him.  I informed him that Ms. James had left for the day.  He said then you come on down to my office, let's talk.

Approximately 10 minutes later, I entered Mr. Stormer's office.  After the normal introductions, he again stated that my promotion had been pulled back because I had a

F-100, Pg 2

number of issues pending. He said he would like to promote me, then he offered a settlement "to (as he put it) get everything behind us." He then stated that he was not aware of everything that had happen in my cases, but he would like to get them resolved so I could get the promotion. I informed him that my cases and the merits involved in them were far more serious then what a performance based promotion could resolve. I told him that there were a number of issues regarding discrimination and reprisals for whistleblowing which stemmed back to 1998, and included, but were not limited to, unfavorable personnel actions, merit staffing violations, sexual harassment, and the repercussions from working in an extremely hostile work environment. He then stated that he was unable to get a straight story from anyone in management and felt that my cases had been handled poorly. He asked me who in HRD had handled my cases. I told him Ms. Judy Mitchell. He rolled his eyes and shook his head. He asked me a number of questions related to both cases. We then began to discuss both cases in detail. We spoke in depth about the circumstances involving the merits of my cases, and we spoke about the individuals involved. When all was said and done, he again offered me a settlement and told me if I wanted the promotion, it was up to me, to go home and sleep on it.

It should be noted, that prior to this meeting, I had not had any conversation with Mr. Stormer regarding my outstanding cases. The meeting described above was initiated by Mr. Stormer after I called him on March 3 2003, inquiring about my performance based promotion. It was during this telephone conversation that Mr. Stormer told me my promotion was pulled back because I had grievances pending, and it was during this telephone conversation that Mr. Stormer asked me to come to his office to discuss the concerns regarding the pulled back promotion.

   2. (#2, F-2-2), Stormer states, "*He (Ridgely) explained his entire employment history and his problems with a string of bosses.*"

Rebuttal:

My discussion with Mr. Stormer regarding my issues with (as he puts it) **problems with a string of bosses**, in actuality was a discussion regarding my pending cases and those individuals, (primarily) three bosses, Melissa Stoehr, O'Keitha Douglas, and Stephen Webber that were involved in them.. The record clearly shows, with credible support, that my dispute with these three individuals is justifiable based on the adverse actions taken by them stemming from the time of my initial act of whistleblowing in 1998. The fact that he acknowledges that I discussed my history demonstrates that he and I discussed the merits of my pending cases during our conversation of March 3, 2003, and that these cases were the bases for pulling back the performance based promotion.

F-100, Pg.

POSITION CLASSIFICATION
POSITION EVALUATION
AMENDMENT

CURRENT TITLE,              Civil Penalty Compliance Specialist
SERIES, AND GRADE:         GS-1801-11

LOCATION:                  MSHA
                           Office of Assessments
                           Special Collections Group

INCUMBENT:                 Michael Ridgely

REFERENCES:                (a) Memoraum dtd July 30, 2002 with
                           Attached performance appraisal for Mr.
                           Ridgely dtd 7/25/02

The evaluation statement prepared by me on 6/27/02 is hereby amended.
Ms. Carolyn James, Local 12 union representative, has appealed the audit
decision by way of reference (a).

Reference (a) states that Mr. Ridgely performs his duties independently and
without supervision 90-100% of the time.

Based on my review of reference (a), it is my determination that Mr. Ridgely
is performing at the GS-12 level.

*Rhonda Long*
Rhonda Long
Human Resources Specialist
7/31/02

Q-4-1

## POSITION CLASSIFICATION
## POSITION EVALUATION

**CURRENT TITLE,**          Civil Penalty Compliance Specialist
**SERIES, AND GRADE:**      GS-1801-11

**LOCATION:**               MSHA
                            Office of Assessments
                            Special Collections Group

**INCUMBENT:**              Michael Ridgely

**REFERENCES:**             (a) MSHA position description number LL0012, Civil
                            Penalty Compliance Specialist, GS-1801-12 with
                            Attached Position Evaluation Report

### BACKGROUND

A desk audit of Mr. Ridgely was conducted on 06/13/02. Ms. Carolyn James, Local
12 union representative, was present.  A supervisory audit was performed with Mr.
Allen Watson on 06/13/02.

The purpose of the audit was to determine if Mr. Ridgely is performing the duties of
this position at the GS-1801-12 grade level, as classified in section C of reference
(a). There is a statement of difference to the GS-12 PD at the GS-11 level.  The
statement of difference says *"The incumbent of this position works under closer
supervision than at the GS-12 level.  More supervisory direction is provided, more
detailed instructions are offered and less assignments are self-generated; this
increases with time in the position.  Tasks and duties involving different methods
and procedures are performed at a less complex level that at the grade 12.  The
employee has less responsibility and less independence"*.

### FINDINGS:

The purpose of this position as specified in reference (a) is to conduct
investigations, interview mine operators and other appropriate individuals, by
collecting information, documents and review accounts/records to determine who is
responsible for compliance with the Mine Act.

Mr. Ridgely states that the delinquent payment casework comes to the office after
assessment and the hearing process.  The work is divided between him and 4 other
collectors.  He states that the 4 other collectors are at the GS-1801-12 level.  This
has been verified using the MSHA staffing pattern. Distribution of the new work

G-4-2

rotates among 5 collectors on a monthly basis. The collector responsible for the distribution runs a recurring list and the new work is distributed evenly based on the number of new cases that have been forwarded to their office.

Mr. Ridgely states that he pulls his assigned cases, checks to see if payment for the citation has been made or he makes a determination that the case is delinquent. If the mine operator has not contested the citation, Mr. Ridgely sends out demand letters, requesting that payment be made. He has to research if the citations were appropriately issued. If the mine owner raises a problem about the citation, Mr. Ridgely states that he ensures that fair treatment is given in the handling of the case.

Mr. Ridgely states that he may work with the MSHA inspector if the mine owner doesn't pay the citation. He has the authority to set up a payment schedule with the owner. He states that he monitors the payment schedule, amends the payment plan if necessary because new violations have occurred, works with the Solicitor's office if they have set up different payment criteria. He states that he determines whether to let the case go, if he determines that the case cannot be collected or pursue the debt. He makes determinations on how to resolve his cases. He makes decisions on when cases go to the Department of Treasury for enforced collection. He states this is done if MSHA has made all efforts to collect the debt but money has not been received in the regulatory timeframe.

Mr. Ridgely's statements regarding his duties reflect that he performs the major duties listed in section B of reference (a). *However, the grade level of the position is based on the point levels assigned to the position classification evaluation factors in section C of reference (a).*

Knowledge required by the position F. L. 1-7 1250 points

The incumbent states that he applies knowledge of:
- mining procedures, terminology and equipment, practices and procedures;
- Internet resources to determine mine ownership
- General aspects of the assessments and inspection processes
- The Mine Safety and Health Act, Debt Collection Act and other Agency guidelines

These knowledges are consistent with those states in reference (a).

Supervisory Controls    F. L.  2 – 4 450 points

Mr. Ridgely stated that he completes all of his assignments and meets his deadlines without any supervision. He stated that until March 2002, there was a Supervisory Compliance Specialist in the office. In March the supervisory position was

G-4-3

abolished. In response to my question regarding who reviews his completed work, he stated that he performs his work independently, without any supervision and that this was also the case before the supervisory position was abolished. He stated that he completes all of his assignments, as required, independently and without supervisory review or intervention.

Incumbent stated that for cases he has determined are uncollectable or that need to be referred to the Department of Treasury for enforced collection, a supervisory signature is required before they are forwarded to Treasury. He stated that this signature process is required but is not a process for review of the work. Incumbent stated that currently, Mr. Allen Watson, Deputy Director, Office of Assessments, signs the letters for Treasury cases. He also stated that the current supervisor of the Civil Penalty Compliance Group, Ms. Myra James sometimes signs the letter for these cases also.

In the supervisory audit with Allen Watson, Mr. Watson confirmed that the Supervisory Civil Penalty Compliance Specialist, GS-1801-13 position was abolished in March 2002. He stated that the collectors report to him in most instances and to Myra James on some issues.

Mr. Watson stated that Mr. Ridgely requires more supervision than the other collectors. He stated that the former supervisor, Ms. O'Keitha Douglas, had developed a plan for the collectors to demonstrate their ability to perform work at the GS-12 level before being promoted to that level. He stated that Mr. Ridgely was given a similar plan for use on November 30, 2001. A copy of that plan is attached. Mr. Ridgely's plan also contained items necessary for improvement of his current performance in order for him to satisfactorily meet the performance standards for the GS-11 level.

Mr. Watson stated that Mr. Ridgely is not meeting his current GS-11 performance standards. He stated he has documentation from Ms. Douglas that Mr. Ridgely is not completing his assignments within standard operating timelines and he is not completing all required processes needed to complete work on the cases. Mr. Ridgely is routinely reminded that the work needs to be completed by established deadlines, following established procedures. Mr. Ridgely does not follow the established procedures independently, but must be reminded by a supervisor to follow them. Mr. Watson had a document in the meeting which he says shows evidence that Mr. Ridgely previously required and still requires constant supervision in order for his work to be completed within the established time frames and following the established procedures. I did not see the document, but it is available from Mr. Watson for review by appropriate parties. There is also a document that shows that a higher level of Mr. Ridgely's cases are sent to the Department of Treasury for collection when compared to the number of cases sent by other MSHA collectors. A review of these cases by the supervisor appears to show that the MSHA established procedures and timeframes for collection were not followed and

G-4-4

that by the date the cases needed to be referred to Treasury, they were sent, without appropriate action being taken by Mr. Ridgely.

The statements of Mr. Ridgely regarding the supervisory controls are in direct contrast to the statements of Mr. Watson. The position description for the GS-12 level states that *the employee receives very general technical guidance and administrative supervision and that they are to independently plan day-to-day schedules and timeframes. Work products are accepted as technically correct and sound and that work review is primarily in the form of overall results produced.* Based on the statements from Mr. Watson, my determination is that this situation appears to match the statement of difference for the GS-11 level. The supervisory control level of 2-4, 450 points in reference (a) is <u>not met</u>.

Factor 3.  Guidelines  F. L.  3–4 450 points

Incumbent states that he interprets and applies the following guidelines when performing his duties: The Mine Safety and Health Act of 1977, the Debt Collection Act, Code of Federal Regulation (CFR) part 30, MSHA assessment procedures guidelines and other guidelines from the Departments of Labor, Treasury and Justice. He stated that he uses judgement and initiative in determining if the guidelines apply to the cases he is working and which guidelines he should use. Sometimes guidelines available do not apply. He stated that he has also developed standard operating procedures for his office to use in performing the work.

These guidelines are consistent with guidelines in reference (a).

Complexity and Scope and Effect    FL 4-4 225 points  and FL 5-4  225 points

Review of the complexity and scope and effect levels stated in reference (a) shows that they are also consistent with information provided by Mr. Ridgely in that mine owners may not provide all information requested by Mr. Ridgely during a case. They may provide him with additional information showing a hardship in meeting payment schedules or showing why payment can't be made or showing why the citation issued is in error. Incumbent stated that if the mine owner raises assessment issues, he must research the assessment criteria to determine if the assessment made was correct. If he feels it was incorrect, he must go back through the assessment office and work with them to resolve the assessment issue.

Extensive analysis and research is involved in the processing of cases. The civil penalty collection process involves the collection of millions of dollars and it encourages increased compliance with the provisions of the Mine Act and therefore, per Mr. Ridgely, "enhances health and safety issues for the miners.

G-4-5

My assessment is that the complexity and scope and effects levels of the work performed by Mr. Ridgely are consistent with those specified in reference (a).

Factors 6 and 7 Personal Contacts and Purpose of Contacts 280 points

Incumbent states that his contacts are with:
- Mine operators or their agents-to discuss violations, negotiate agreements, gathering and providing information
- Miners-to discuss violations, negotiate agreements, gathering and providing information
- Contractors or their agents
- MSHA District Office Managers or supervisors to discuss citations
- Officials at the Department of Treasury –to gather and exchange information on the collection process
- State corporations commission-to determine mine ownership
- State mining enforcement commission-to determine mine ownership
- Mine safety and health review commission and administrative law judges-gathering and exchanging information and providing technical expertise

This is consistent with the levels specified in reference (a).

Factor 8. Physical Demands Level 8-1  5 points

Incumbent stated that the work is sedentary.

Factor 9. Work Environment Level 9-1 5 points

Incumbent stated work is performed in an office setting.

Conclusion:

My assessment is that Mr. Ridgely is not currently performing at the GS-1801-12 level.

*Rhonda Long*
Rhonda Long
Human Resources Specialist (Rec/Plac/Class)
Date: 06/27/02

G-4-6

U.S. Department of Labor     Mine Safety and Health Administration
1100 Wilson Boulevard
Arlington, Virginia 22209-3939



OCT 3 0 2002


MEMORANDUM FOR CAROLYN JAMES
                   LOCAL 12 VICE PRESIDENT

FROM:           STEPHEN WEBBER  *Stephen F. Webber*
                  Director of Assessments

SUBJECT:        Failure to Promote Grievance Decision

This constitutes the decision in the grievance dated September 20, 2002, filed on behalf Mike
Ridgely with respect to the settlement agreement dated May 29, 2002. Management and the
Union both have agreed to waive the meeting.

In a meeting on August 30, 2002, prior to this grievance being filed, I met with you and Judy
Mitchell, Human Resources Division to explain my decision regarding the outcome of the desk
audit performed on Mike Ridgley. I informed you that I would not promote Mike Ridgley to a
GS-12 until he improved without supervision. I would provide him with a plan to help him get
to the GS-12 level and that I had offered him training in the past and would continue to do so. I
further explained that Myra James had become his supervisor and would be developing his plan
and would re-evaluate his performance in 90 days. I explained that this was the same thing that I
had conveyed to you after I was provided the results of his audit dated June 27, 2002, from the
Human Resources Division, which states, " Mr. Ridgley is not currently performing at the GS-
1801-12 level". You then indicated that you had received back the results of the audit from the
individual who had conducted the audit and these results were that he was performing at the GS-
12 level. I responded by saying that those results had not been discussed with top management
in A&M and me until sometime after August 5, 2002 when a final determination was made not
to promote Mr. Ridgley. You and I then discussed whether or not the auditor had any say in the
final outcome of the audit. I explained that the auditor's determination was based on narrow
facts and was not the final determination. Therefore, your sought remedy is denied.


According to the Collective Bargaining Agreement between the Department of Labor and Local
12, Section 9 of Article 43, the union may invoke this decision to arbitration within twenty-five
workdays. The union must notify the Director of the Office of Employee and Labor Relations as
provided in Article 44 of the aforementioned agreement.

G-5-83

DOL/Local 12 Standard Grievance Form  RECEIVED
OFFICE OF
ADMIN. AND MGMT.

GRIEVANT'S NAME: Local 12 _____    AGENCY: MSHA _____

| Step 1 Information | 2002 SEP 20 PM 2: 28 |

Official Presented To: _____    Agency: _____ MSHA
U.S. DEPT. OF
LABOR

Local 12 Representative: _____    Agency: _____

Date of Alleged Violation (or continuing): _____

Basic Facts:

Signature of Grievant: _____    Date Filed: _____

Date of Receipt and Initials: _____

---

Step 2 Information

Official Presented To: David Meyers    Agency: MSHA

Local 12 Representative: Carolyn James    Agency: MSHA

Additional Information: MSHA management has failed to promote Mr. Ridgely to
GS-12, as required by Settlement Agreement dated 5/29/02
(Attached)

Alleged Violations of Contract
Article(s) and/or Regulations: 3 ___, 18, 33, 34 _____

Remedy Sought: Promotion as of date of audit determination with backpay
plus interest and any and all remedies deemed appropriate.

Signature of Grievant: _Carolyn James_ _____    Date Filed: 9/24/02

Agency Vice President's Initials: _____    Date of Receipt and Initials: _____

G-5-84

POSITION CLASSIFICATION
POSITION EVALUATION
AMENDMENT

CURRENT TITLE,          Civil Penalty Compliance Specialist
SERIES, AND GRADE:      GS-1801-11

LOCATION:               MSHA
                        Office of Assessments
                        Special Collections Group


INCUMBENT:              Michael Ridgely

REFERENCES:             (a) Memoraum dtd July 30, 2002 with
                        Attached performance appraisal for Mr.
                        Ridgely dtd 7/25/02


The evaluation statement prepared by me on 6/27/02 is hereby amended.
Ms. Carolyn James, Local 12 union representative, has appealed the audit
decision by way of reference (a).

Reference (a) states that Mr. Ridgely performs his duties independently and
without supervision 90-100% of the time.

Based on my review of reference (a), it is my determination that Mr. Ridgely
is performing at the GS-12 level.


*Rhonda Long*
Rhonda Long
Human Resources Specialist
7/31/02

G-5-85

July 30, 2002

Memorandum for Judy Mitchell

From:          Carolyn T. James
               Agency Vice President, Local 12

Subject:       Michel Ridgley Audit

Based on a review of Mr. Ridgely's audit results and most recent performance appraisal, I am appealing the audit decision and requesting that Mr. Ridgely be promoted to the GS-12 level immediately. This request is based on conflicting information provided by his supervisor during the audit conducted on June 13, 2002, and his appraisal dated July 25, 2002.

It is my understanding that the grade determining factors between the GS-11 and 12 Civil Penalty Compliance Specialist involves the level of supervision.

I have attached his most recent performance appraisal for your review. This performance appraisal contains information that contradicts material provided during the supervisory audit. According to Mr. Watson, in his appraisal, Mr. Ridgely met five and exceeded one of his standards. It is significant to note that in the narrative portion of the evaluation, Mr. Watson indicates that during this rating period the CPCO's Special Collections Group worked without a full-time supervisor or division chief and as a result Mr. Ridgely was asked to perform duties and assignments normally assigned to the supervisor; that he almost always performs his duties independently and without supervision 90 - 100% of the time; and that only the most unusual and unique activities are brought to the attention of the supervisor.

It is inconceivable to me that an employee who is having supervisory problems as indicated in the audit documentation, would be placed on a special project for the office and then performed in such an exemplary manner as to exceed the element.

I requesting the attached information be reviewed and a written response be provided by COB 8/2/2002.

Attachment

cc: Richard Brechbiel
    Steve Webber
    Keith Watson

@-5-86